SHUMATE, administrator, *v.* McLENDON *et al.*

1. Prior to the passage of the act of 1894 (Acts 1894, p. 100), a vendee of land, holding under a bond for titles, with a portion of the purchase-money paid, had an interest in the land which was subject to levy and sale.
2. The act of 1894 is embraced within the provisions of the Civil Code, §§ 5432-5434, under the terms of which the holder of a bond for titles has no leviable interest in the land, without reference to whether any portion of the purchase-money has been paid, until he becomes invested with the legal title.
3. The security deed seems to be peculiar to the law of this State, and its legal status has been fixed by judicial decisions considering alone the nature of the instrument, and, in many cases, paying little or no regard to analogies.
4. Hence it has been held that a security deed conveys the absolute title, and leaves the grantor no interest in the land which can be subjected to levy and sale by a creditor whose judgment was obtained after the deed was executed.

5. Before such a levy and sale can be made there must be a redemption of the property.

6. Redemption can be accomplished only by payment of the secured debt in full.

7. Lapse of time, even to such an extent as would bar a right of action on the evidence of debt, will not operate as redemption.

8. Even if it was ever the law of this State that a partial payment of the debt would give the grantor in a security·deed a leviable interest in the land, or that, even where no part of the debt had been paid, a purchaser at a sheriff's sale under a subsequent judgment against the grantor would acquire the debtor's right ,to redeem by paying the money to the lender, such has not been the law since the passage of the act of 1894.

9. The debtor may redeem, or his subsequent judgment creditor may redeem. If the creditor redeem, he can compel a reconveyance by the grantee, so as to revest the legal title in the debtor and make the land subject to sale under the creditor's judgment.

10. The grantee in a security deed holds the legal title for the benefit of the owner of the debt. As long as he owns the debt, he holds for his own benefit; if he transfers the debt, but not the title, he holds for the benefit of the transferee.

11. The interest of the grantor is not affected by a transfer of the debt or of the title. He acquires no leviable interest until the debt is paid to the transferee.

12. Applying these principles to the facts of the present case, the legal title to the land in controversy is still in the original grantee in the security deed, for the benefit of the transferee of the debt. Neither the grantor, his legal representatives, nor his heirs have ever had, since the execution of the security deed, any leviable interest in the property ; 'and the judgment finding the property not subject to the execution was proper.

Argued May 20, — Decided June 9, 1904.

Levy and claim.　　Before Judge Holden.　　Wilkes superior court.　　December 29, 1903.

An execution in favor of Shumate, administrator, against Barnett, as administrator of Isaac McLendon, was levied upon a tract of land, and a claim thereto was interposed by Samuel McLendon. The case was submitted to the judge upon an agreed statement of facts, and he rendered a judgment finding the property not subject, and to this judgment the plaintiff in execution excepted. The facts disclosed by the record are as follows:　　In 1854 Isaac McLendon became the owner of a tract of land which embraces the land now in controversy. On January 24, 1876, he conveyed to the Bank of Washington, by a security deed, the land in dispute. On April 29, 1876, Hill obtained judgment against Isaac McLendon, and the execution issued thereon was levied on the land in controversy on May 26, 1877, and on July 3, 1877, the

land was sold to Sims & Truitt for $100. On these dates the debt due the bank of Washington was still unpaid, and the sheriff's deed recited that the property was sold "subject to a 70 acres homestead in the same, and also subject to an incumbrance in favor of the Bank of Washington on the same." On January 5, 1877, Isaac McLendon applied to the ordinary for a homestead, under the provisions of the constitution of 1868, in the land in controversy, and the homestead thus applied for was finally set apart on November 4, 1878. On April 4, 1878, Sims & Truitt conveyed the land to Mary McLendon, wife of Isaac McLendon, the deed reciting that the grantors held the land subject to the homestead and incumbrance above referred to, and that the conveyance was made subject thereto. In 1877 the Bank of Washington obtained judgment against Isaac McLendon, and on January 4, 1881, in consideration of $78.19, transferred the execution issued thereon to Sims & Truitt, who, on January 24, 1881, transferred the same to Mary McLendon. On this execution appear the following payments made by Mary McLendon: November 30, 1880, $150 ; December 30, 1880, $135. The security deed made by Isaac McLendon to the bank was delivered to Sims & Truitt, and by them delivered to Mary McLendon, at the time of the respective transfers, and was in possession of Mary McLendon at the time of her death, in 1901. No deed of reconveyance was ever made by the bank to Isaac McLendon. In November, 1877, Shumate, as administrator, obtained judgment against Isaac McLendon. This judgment became dormant, and in November, 1897, was revived by scire facias against Barnett as administrator, and the execution issued on this judgment is the one to the levy of which the present claim was interposed. The claimant is a child of Mary McLendon. In 1878 and 1879 Mary McLendon executed mortgages upon portions of the land in controversy, to secure debts due by her, which were afterwards paid. In 1878, 1879, 1881, and from 1894 to 1901, Mary McLendon returned the land in controversy for taxation as her own. The tax books for 1880 and from 1882 to 1893 could not be found. Since 1901 the property has been returned as the estate of Mary McLendon. After 1877 Isaac McLendon returned no land for taxation.

*Colley & Sims, W. H. Toombs,* and *S. H. Hardeman,* for plaintiff. *William Wynne* and *B. S. Irvin,* contra.

COBB, J. (After stating the foregoing facts.) It was held in an early case that where land was sold, and the vendee held under bond for titles, with a portion of the purchase-money paid, both the vendor and the vendee had a leviable interest in the land, represented by the balance due on the purchase-money in the one instance, and by the purchase-money paid in the other; and that a purchaser at the sale would obtain such an interest in the land as would give him a right to call for the balance of the purchase-money, or to pay the balance of the purchase-money and demand a conveyance, according to whether the vendor's or the vendee's interest had been seized under the execution. See *Wilkerson* v. *Burr*, 10 *Ga.* 117, and cases cited in Van Epps' annotations. In 1875 the General Assembly, recognizing the inconvenience incident to such sales, passed an act which provided that where any of the purchase-money had been paid, the entire interest stipulated in the bond might be seized and sold under an execution against the vendee, and the proceeds of the sale so appropriated as to discharge first the amount due on the purchase-money, and the balance distributed as the property of the vendee. Code of 1882, § 3586. This provision of the Code of 1882 was superseded by the act of 1894, providing for a levy upon and sale of property where the defendant in execution has an interest therein and does not hold the legal title (Acts 1894, p. 100). *Green* v. *Hill*, 101 *Ga.* 258. It was accordingly held, in the case just cited, that since the passage of the act of 1894, one holding land under a bond for titles had no leviable interest therein, without reference to whether any portion of the purchase-money was paid, until he became invested with the legal title to the land. See also *Black* v. *Coffin Company*, 115 *Ga.* 15. The section above cited was not carried into the Code of 1895, and the act of 1894 is now embraced within the provisions of the Civil Code, §§ 5432–5434. Such is the present state of the law in reference to the remedy to be pursued by the holder of a judgment lien against one who, as a purchaser, holds an interest in the land under a bond for titles.

The security deed first made its appearance in our law in 1871, and it would seem, upon principle, that the status of the parties to such a conveyance would have been the same as in the case of a vendor and vendee under a bond for titles, each having a leviable interest in the land,—the creditor to the extent of his debt, the

debtor to the extent of his interest represented by the difference between the value of the land and the debt,— and that the purchaser would, in the one instance, acquire the right to collect the debt, and in the other instance the right to pay the debt and secure a conveyance of the land.    That the grantee in a security deed, being vested with the legal title, has a leviable interest in the land, and that a purchaser at sheriff's sale under such a levy would acquire the right to collect the debt, was recognized by this court in *Parrott* v. *Baker,* 82 *Ga.* 364 (3).    But in *Jarvis* v. *Burke,* 59 *Ga.* 232, a case decided in 1877, only a few years after the security deed first made its appearance in our law, it was held that before a subsequent judgment creditor of the grantor in such a deed could subject the land, it would be necessary to redeem. And in *Phinizy* v. *Clark,* 62 *Ga.* 623, it was distinctly held that as the grantor in a security deed divested himself of the legal title, he had no interest in the land which could be seized on execution, and that a purchaser at a sale, where his interest was attempted to be seized, acquired no title; that until there was a redemption by the debtor, or by some one claiming under him, he had no such interest in the land as was subject to levy and sale.    These decisions have been steadfastly adhered to.    See *Osborne* v. *Hill,* 91 *Ga.* 138 (2); *Swift* v. *Lucas,* 92 *Ga.* 796; *Jordan* v. *Loan Assn.,* 108 *Ga.* 495; *Ashley* v. *Cook,* 109 *Ga.* 656, and cit.    Prior to the act of 1894, while it was settled law that a subsequent judgment creditor of the grantor in a security deed could not subject the land to the payment of his execution until there had been a redemption, there was no method provided for a redemption by such a judgment creditor until that act was passed.    That act did not change the interest of the grantor in the land, but simply provided a method by which a judgment creditor of the grantor might subject such interest to the payment of his debt.    There never has been a time, since the security deed made its appearance, when a subsequent judgment creditor of the grantor could lawfully levy upon the land prior to redemption; and as long as the debt secured, or any portion of it, remained unpaid, the land was unredeemed.    Redemption could be accomplished only by payment, and payment in full.    Lapse of time, even to the extent that all legal remedies of the creditor would be barred, would not operate as a redemption of the land and revest the title in the grantor or

his heirs. *Duke* v. *Story*, 116 *Ga.* 388. Until the debt is actually paid, and paid in full, the legal title remains vested in the grantee; and if he is the owner of the debt, it remains vested in him for his own benefit. If he has assigned the debt but has not transferred the title, he holds the legal title for the benefit of the owner of the debt, whoever he may be, until it is discharged by payment. *Henry* v. *McAllister*, 93 *Ga.* 668 (2). See also *Van Pelt* v. *Hurt*, 97 *Ga.* 660; *Sheppard* v. *Reese*, 114 *Ga.* 411, 413–414. Redemption is indispensably necessary before the legal title can be revested in the grantor, and actual payment is essential, both at law and in equity, to bring about redemption. Even if it ever was the law, as was intimated in *Osborne* v. *Hill*, 91 *Ga.* 138, that a repayment of a part of the debt would give the grantor in a security deed a leviable interest in the land, and that even where the grantor had paid no part of the debt a purchaser at a sheriff's sale under a subsequent judgment against him would acquire the debtor's right to redeem by paying the money to the lender, such is not the law since the passage of the act of 1894.

Let these principles be applied to the facts of the present case. At the date of the sheriff's sale under the Hill execution the debt due the Bank of Washington had not been paid in full. The land had, therefore, not been redeemed. Isaac McLendon had no leviable interest therein, and Sims & Truitt, the purchasers, acquired no title to any interest in the land, and therefore no interest in the land passed to Mary McLendon under their deed. By the assignment of the execution of the bank against Isaac McLendon, Sims & Truitt became the owners of the debt then due to the bank, and by their assignment to Mary McLendon she became the owner of the debt against her husband, and acquired the right to collect whatever was the balance due on the same at the time of the transfer to her. While the judgment thus transferred to her has become dead, and can not be revived, and the debt upon which the judgment was based is long since barred, still, so far as the present record discloses, the balance due on the Bank of Washington debt at the time of the transfer of the execution to Mary McLendon has never been paid, either by Isaac McLendon, his heirs, his creditors, or any one else. There has, therefore, been no redemption. The title to the land is still vested in the Bank of Washington, and until this title becomes revested by payment of

the balance due on the debt to the legal representatives or heirs of Mary McLendon, there is no leviable interest in the land in the heirs or legal representatives of Isaac McLendon, and the levy of the Shumate execution was an absolute nullity. See, in this connection, *Moss* v. *Stokely*, 107 *Ga.* 233. The record does not disclose who was in possession of the land in dispute at the date of the levy. It does appear that Mary McLendon died in possession, and it might be inferred from this that her heirs, the claimant among them, were in possession. But without reference to this, the burden was upon the plaintiff in execution to show that the defendant in execution had a leviable interest in the land. He might have shifted this burden by showing title in the intestate of the defendant in execution, or possession in the latter since the judgment. Civil Code, § 4624; *Primrose* v. *Browning*, 56 *Ga.* 369; *Coleman* v. *Rice*, 105 *Ga.* 164; *Southern Mining Company* v. *Brown*, 107 *Ga.* 266. Isaac McLendon was dead when the judgment was revived, and it does not appear that his administrator was ever in possession. The plaintiff in execution was therefore required to show a legal title, or at least a leviable interest in the land in the defendant in execution at the date of the levy, and this he has failed to do. The plaintiff in execution failed to carry the burden imposed upon him by the law, and the claimant was not put upon proof of his title. The court, therefore, did not err in holding that the land was not subject to the execution. The homestead never having attached to any interest in the land, except Isaac McLendon's equity of redemption, under the view we have taken of the case any questions relating to the homestead are immaterial to the present controversy.

*Judgment on main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur.*