In re PHŒNIX PLANING MILL.

(District Court, N. D. Georgia. April 26, 1918.)

No. 6101.

BANKRUPTCY ☞139(1)—LIENS—RIGHTS VESTED IN TRUSTEE.

　　Under Park's Ann. Civ. Code Ga. §§ 6037–6039, as construed by the Supreme Court of the state, the holder of a bond for title on which part of the purchase money has been paid has no leviable interest in the land, and his trustee in bankruptcy, under Bankruptcy Act July 1, 1898, § 47a(2), as amended by Act June 25, 1910, § 8 (Comp. St. 1916, § 9631), which vests him with "all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon," has no lien upon the land as against the holder of the bond as security under a valid assignment, although not recorded, there being no statute requiring such recording.

In the matter of the Phœnix Planing Mill, bankrupt. On review of order of referee allowing claim of Atlanta National Bank to priority. Confirmed.

King & Spalding and Dodd & Dodd, all of Atlanta, Ga., for claimant.

J. Henry Porter and Walter Dillon, both of Atlanta, Ga., for trustee.

NEWMAN, District Judge. It appears in this case that the bankrupt corporation, the Phœnix Planing Mill, bought a lot in the city of Atlanta on December 22, 1909, from James F. Leary, and took a bond for title. They made extensive improvements on the lot, and during the time the improvements were being made, or subsequently, it is

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

immaterial here for present purposes, they transferred the bond for title received from Leary to the Lowry National Bank. Subsequently, and three days later, to wit, on the 25th day of March, 1913, they transferred the bond for title to the American National Bank, now the Atlanta National Bank, in consideration of a certain amount of money then due the American National Bank and any money to be obtained thereafter from said last-named bank.

The bond for title from Leary and the transfer to the Lowry National Bank were recorded in the office of the clerk of the superior court of Fulton county. The subsequent transfer to the American National Bank, subject to the debts to Leary and the Lowry National Bank, was not recorded until the time the bankruptcy proceedings were instituted against the Phœnix Planing Mill.

The property was sold by the trustee in bankruptcy, with the consent of all the lienors, the purpose being to reduce or turn the property into cash, and in order that the work in the mills might go on, preserving carefully, by an order of the court and the agreement of all lienors, the rights of everybody at interest as they stood at the date the bankruptcy proceedings were instituted.

The property sold for enough to pay off the claims of James F. Leary and the Lowry National Bank, leaving something over $4,000 to go to the Atlanta National Bank, if its claim was recognized; and the question now is whether, under the facts, the Atlanta National Bank is entitled to its claim of priority over the general creditors, represented by the trustee, with a lien of a judgment creditor by legal or equitable proceedings, under the act of June, 1910.

The trustee became a judgment creditor after the bankruptcy proceedings were instituted, under the act mentioned, so that the question presented here is whether or not the lien of the trustee, as a judgment creditor, has priority over the claim of the Atlanta National Bank as a creditor holding an assigned or transferred bond for title not recorded.

The question is an interesting one, and has been thoroughly and ably argued both by counsel for the trustee and for the bank. It is conceded by all parties that the question must be determined under the laws of the state as they stood at the time the bankruptcy proceedings were instituted.

There was some question in the case originally as to whether or not the transfer to the American National Bank was good, because the transfer was not attached to the bond for title, but was simply placed with it, though not physically attached to the bond for title. After careful investigation of the matter, that position seems to have been abandoned, or not seriously insisted upon, by counsel for the trustee. I think it is correctly abandoned, because the facts show such transfer and such acts by the parties as make the transfer to the American National Bank, or the Atlanta National Bank, as good a transfer in every way as if it had been physically attached to the bond for title. It was placed in the same envelope with it, and went along with it, up to or just before the time of the bankruptcy proceedings. It was clearly referred to in the transfer to the American National Bank, or the Atlanta National Bank. The reference to these two banks is because the

American National Bank was transferred to the Atlanta National Bank some time prior to the bankruptcy proceedings.

The specific question here is, then: Is the lien of an unrecorded transfer of bond for title good as against the lien obtained by the Trustee in Bankruptcy under the Act of Congress referred to above, by which he has a lien of a judgment creditor by legal or equitable proceedings?

The act of the Legislature of Georgia of December 17, 1894 (Laws Ga. 1894, p. 100), now embodied in Park's Code, §§ 6037, 6038, and 6039, seems to me to make an insuperable objection to effect being given to the trustee's lien, under the amendment of 1910 to the Bankruptcy Act, in this case, as contended by counsel for the trustee. Under all of the decisions of the Supreme Court of Georgia on the subject, and they are numerous, it is held that under this act there is no leviable interest in a holder of a bond for title such as is in question here.

In Black v. Gate City Coffin Co., 115 Ga. 15, 16, 41 S. E. 259, Lumpkin, P. J., delivering the opinion of the court, said this:

"Under section 3586 of the Code of 1882, property held under a bond for titles with a portion of the purchase money paid could be lawfully levied upon and sold under a judgment against the holder of such bond. This section also provided for a distribution of the money arising from such a sale. The statutory scheme for thus reaching an equitable interest in realty held by a defendant in execution was, however, superseded by the act approved December 17, 1894, entitled "An act to provide for the levy and sale of property where the defendant in fi. fa. has an interest therein but does not hold the legal title thereto, and to provide for the distribution of the proceeds arising from such sale, and for other purposes." See Acts of 1894, p. 100. The provisions of this act are now embraced in the Civil Code, §§ 5432, 5433. Accordingly, this court ruled as appears in the case cited in the headnote. To the same effect see, also, Jordan v. Central City Loan & Trust Co., 108 Ga. 495 [34 S. E. 132]."

In Shumate, Administrator, v. McLendon et al., 120 Ga. 396, 48 S. E. 10, the second headnote is as follows:

"The act of 1894 is embraced within the provisions of the Civil Code, §§ 5432–5434, under the terms of which the holder of a bond for title has no leviable interest in the land, without reference to whether any portion of the purchase money has been paid, until he becomes invested with the legal title."

In Burkhalter v. Durden, 122 Ga. 427, 428, 50 S. E. 144, Judge Cobb, delivering the opinion of the court, said this:

"The claimant's deed was on its face an absolute conveyance; but, treating it as a deed to secure a debt, Burkhalter had no right to enforce his execution against the land until he paid or tendered to Durden the amount of his debt. Shumate v. McLendon, 120 Ga. 397 [48 S. E. 10]."

From the foregoing it is perfectly clear that in Georgia there is no leviable interest in a holder of a bond for title with part of the purchase money paid, as was true in this case. Not being a leviable interest, the judgment given the trustee by the amendment to the Bankruptcy Act of 1910, it is, of course, unavailable in any practical way where bankruptcy occurs as in this case. There might be a case where the amount of purchase money paid and the balance due were such that the title

might be put in the bankrupt and the rights of the creditors secured; but whether this be true or not, and I am only stating it as a thing which might happen, no such state of facts exists here. No effort whatever was made to put the title in the bankrupt, and consequently any judgment lien which the trustee might have under the amendment to the Bankruptcy Act referred to would be ineffective for any practical purposes.

The law of Georgia for a long time permitted bond for title interests in property to be sold, but the difficulties growing out of that, according to the Supreme Court of Georgia, gave rise to the necessity for the act of 1894, providing that after the purchase money had been paid the vendor may be required to convey to the vendee, "and when such conveyance has been filed and recorded the said property may be levied on and sold as the property of the defendant," and up to that time no right to levy on it or sell it exists.

The amendment of 1910 to the Bankruptcy Act—Act July 1, 1898, c. 541, § 47a (2), 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1916, § 9631)—to which I have referred, is as follows:

"And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon."

It will be seen that the trustee is given the "rights, remedies, and powers of a creditor holding a lien," etc., and the rights, remedies, and powers, and the only rights, remedies, and powers, given a judgment creditor under the laws of Georgia, as against a bond for title interest in property, are those given by the act of 1894 to which I have referred. That is to pay the balance due the vendor and have the title put in the vendee and then levy and sell. It will be perceived that the trustee is given the rights, remedies, and powers of a judgment creditor, making the act of 1894 of the Georgia Legislature peculiarly applicable here.

The sale of this property by the trustee, and the fact that the property was reduced to money, has no effect on this question, because, under the agreement I have referred to, the liens and rights of the party must stand as they stood in the real estate before it was sold.

Counsel for the trustee claim that the provisions of the act of 1894, relating to the manner in which bond for title interests may be made subject to judgment liens, are a mere matter of "procedure." In a way possibly they are a matter of procedure, and yet it is a procedure which, as I have shown, fixes certain rights and certain lack of rights in judgment creditors. Certainly it leaves a judgment creditor without any rights, except in the manner provided in the statute.

Taking another view of the matter: This bond for title was transferred to the American National Bank, subject to the debt to Leary and also the debt due to the Lowry National Bank, in consideration for money then due and to be thereafter obtained from the bank. It was a perfectly valid transaction, and put the right to the bond for

title in the bank, subject to the older debts mentioned, and for which it had been given as security.

The law of Georgia on the subject of the recording of bonds for title is stated in sections 4213-4215 of Park's Code, which sections contain the act of the Legislature of Georgia of 1900. This simply provides that bonds for title may be admitted to record. There is nothing in the act, nor in any law of Georgia that I know, requiring them to be recorded, so whether or not the record of this bond for title was necessary to make it good as against a judgment creditor is very doubtful to say the least about it. A bond for title is nothing more than an agreement by the owner of land to convey in the event the obligee shall comply with certain conditions on his part. It puts no title into the obligee, as I have stated, and no title goes into him until the conditions of the bond are fulfilled by the payment of the purchase money to the vendor.

There is no charge whatever in this case of fraud on the part of anybody. It is conceded that the bank took this transfer of the bond for title in good faith and that it was an honest transaction, and its rights are those of a holder of a bond for title duly transferred for a valid and sufficient consideration.

Fixing the liens, therefore, or rather the rights of the parties as to priority as they existed at the time the petition in bankruptcy was filed, I am compelled to find that the rights of the bank were greater than those of the trustee in bankruptcy clothed with the lien which he acquired under the amendment of 1910 to the bankruptcy act referred to. His lien, at the most, was that of a general judgment creditor, which, in my opinion, did not take precedence over the rights of the bank. See Donovan v. Simmons, 96 Ga. 340, 22 S. E. 966.

The action of the referee, therefore, was correct in so finding, and his action must be, and the same is, hereby confirmed.