In re PATTERSON LUMBER·CO.

In re BELMONT TRUST CO.

(District Court, E. D. Tennessee, N. E. D.)

No. 239.

1. BANKRUPTCY ⬨⟹18—ANCILLARY PROCEEDINGS—POWERS OF COURT—MORT-GAGED PROPERTY.

Under Bankruptcy Act July 1, 1898, c. 541, § 2, 30 Stat. 545, as amend-ed by Act June 25, 1910, c. 412, § 2, 36 Stat. 839 (Comp. St. 1916, § 9586), by the addition of clause 20, providing that courts of bankruptcy may exercise ancillary jurisdiction over persons or property within their re-spective districts "in aid of a receiver or trustee appointed in any bank-ruptcy proceedings pending in any other court of bankruptcy," a court of ancillary jurisdiction, which has taken possession of mortgaged property in aid of a bankruptcy court of primary jurisdiction, has no authority to determine, regardless of the court of primary jurisdiction, whether the mortgage shall be enforced through the bankruptcy court or in independ-ent proceedings by the mortgagee, nor to release the mortgaged premises to the mortgagee for the purpose of such independent foreclosure.

2. BANKRUPTCY ⬨⟹18—ANCILLARY PROCEEDINGS—SALE OF MORTGAGED PROP-ERTY.

Even if the ancillary court has such authority, it should, in the exer-cise of its discretion, refuse to authorize an independent foreclosure suit, especially where the court of primary jurisdiction has determined that the best interests of the estate require that the mortgaged property be sold in the bankruptcy proceedings free from liens.

In Bankruptcy. In the matter of the Patterson Lumber Company, bankrupt. On petition of the Belmont Trust Company for leave to file bill to foreclose mortgage. Denied.

See, also, 228 Fed. 916.

Shoun & Trim and S. J. Milligan, both of Greeneville, Tenn., and E. R. Taylor and Rufus M. Hickey, both of Morristown, Tenn., for petitioner.

Wm. L. Talley, of Nashville, Tenn., and Williams, Folsom & Strouse, of New York City, for trustee.

SANFORD, District Judge. The situation under which this peti-tion has been filed is as follows:

Upon an involuntary petition in bankruptcy filed in the United States District Court for the Southern District of New York against the Patterson Lumber Co., that court, on October 5, 1914, appointed re-ceivers of its property. On October 16, 1915, this court, under an ancillary petition, appointed a receiver of the assets of the alleged bank-

⬨⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rupt within this district "in aid of the receivers appointed in the United States District Court for the Southern District of New York and of any trustee that may hereafter be appointed in said bankruptcy proceeding in the Southern District of New York." Among other assets is a tract of 6,500 acres of land situated in this division of the Eastern District of Tennessee, upon which the alleged bankrupt had, on April 14, 1909, executed a mortgage to the Belmont Trust Co., a Pennsylvania corporation, to secure an issue of bonds, of which $20,000 are still unpaid. This property is also subject to second and third mortgages executed to one Strouse as trustee to secure debts aggregating at least $20,000. The Patterson Lumber Co. having been adjudged a bankrupt in the original proceedings in the District Court of New York, a trustee was duly elected and qualified. The Trust Co. having by its counsel given notice in the proceedings in New York that it intended to foreclose the mortgage to it, the trustee in bankruptcy applied to the District Court of the Eastern District of Pennsylvania for an order restraining the Trust Co. from instituting proceedings to foreclose its mortgage; whereupon that court granted such restraining order until the Trust Co. should have obtained leave "from the court having jurisdiction of the mortgaged premises" to foreclose the mortgage. After the handing down of the opinion of the Pennsylvania Court and before the entry of its order, the referee in bankruptcy in the New York proceedings, without notice to the Trust Co., but with the consent of the trustee under the second and third mortgages, entered an order authorizing the trustee in bankruptcy to sell the property in question at public or private sale, free and clear of liens of the three mortgages, and enjoined and stayed all proceedings on the part of lien holders or creditors pending such sale. The Trust Co. has now filed this petition in the ancillary proceeding in this court, praying leave to file a bill for the foreclosure of said mortgage, against the bankrupt, the trustee in bankruptcy, the holders of the second and third mortgages and the bondholders under the first mortgage.

The holders of the second and third mortgages have joined in the prayer of this petition. Notice of this petition having been given, the trustee in bankruptcy, the trustee under the second and third mortgages, and others have appeared and moved to dismiss the petition of the Trust Co. for want of jurisdiction, and have also answered the same.

[1] The general rule is well settled that mortgaged property in possession of a bankrupt at the time the petition is filed is brought into the custody of the court of bankruptcy, which acquires exclusive jurisdiction over it and may determine whether it will itself enforce the security or surrender the property to the mortgagee, with permission to foreclose the mortgage aliunde. 1 Lovel. Bank'cy (4th Ed.) 171, and cases cited. The general rule is not seriously questioned here; the insistence being, however, that where the mortgaged property does not lie within the bankruptcy court of primary jurisdiction but in a bankruptcy court in another district which has seized the property in the exercise of ancillary jurisdiction, the determination of this question as to the method of foreclosure is thereby vested in the

court of ancillary jurisdiction rather than in that of primary jurisdiction.

Prior to the amendment of 1910 there was for a time a diversity of opinion whether a bankruptcy court of primary jurisdiction could directly exercise its jurisdiction over property situated in another district, or whether such jurisdiction should be exercised through ancillary proceedings in the court of the district in which said property lay; it being questioned whether the court of bankruptcy of the district in which such property lay could exercise ancillary jurisdiction in aid of the court of primary jurisdiction. However, in Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, and Elkus, Petitioner, 216 U. S. 115, 30 Sup. Ct. 377, 54 L. Ed. 407, it was definitely determined that courts of bankruptcy in other districts had ancillary jurisdiction to make orders and issue process in aid of proceedings pending in the bankruptcy court of primary jurisdiction. It was, however, not held or intimated in either of these cases or in any other adjudicated case, so far as I am aware, that such ancillary jurisdiction extended further than to aid the proceedings in the court of primary jurisdiction and in subordination thereto. Subsequently, by the Act of June 25, 1910, section 2 of the Bankruptcy Act was amended by adding clause 20, specifically authorizing courts of bankruptcy to "exercise ancillary jurisdiction over persons or property within their respective territorial limits in aid of a receiver or trustee appointed in any bankruptcy proceeding pending in any other court of bankruptcy." Comp. St. 1916, § 9586.

It is earnestly contended in behalf of the Trust Co. that when this ancillary jurisdiction is exercised by a court of bankruptcy under this section of the Act by seizing property within its jurisdiction, as in the present case, such court of ancillary jurisdiction thereby becomes vested with plenary power to determine all questions of priority as to the property seized by it, including the question whether or not a mortgage upon such property should be enforced by the court of bankruptcy itself or permission given to the mortgagee to foreclose the mortgage dehors the court. In support of this contention the petitioner relies upon Fidelity Trust Co. v. Gaskell (8th Circ.) 195 Fed. 865, 115 C. C. A. 527. In that case, however, the sole question was whether the court of ancillary jurisdiction, having seized certain property as the property of the bankrupt, had jurisdiction to determine the right of an intervenor claiming the property as his own. In deciding this question affirmatively, the court further said that not only is a court of ancillary jurisdiction authorized to determine such adverse claim to the property, but (195 Fed. 873, 115 C. C. A. 527) that the ancillary jurisdiction vested by the amendment of 1910 also included the power to hear and adjudge the claim of intervenors to "legal or equitable liens upon, the property it takes, or holds in its legal custody, by virtue of that jurisdiction, and to send the proceeds to the court of original jurisdiction, or to apply it to the discharge of the claims of intervenors in accord with its decision." This latter expression of opinion was, however, obviously merely obiter, the case not involving any question of a lien upon property or the disposition thereof in the en-

forcement of such lien, but merely the question as to the right of the ancillary court to determine whether the property which it had seized was in fact the bankrupt's property. The right to seize property of the bankrupt necessarily involves, however, as an incident to the exercise of such jurisdiction, the right to determine whether property so seized is in fact the property of the bankrupt; since otherwise the court has no authority to seize it. The determination of this question, however, does not involve the very different question whether, if it be determined to be the property of the bankrupt, the court, having seized it by virtue of its ancillary jurisdiction in aid of the court of primary jurisdiction, has the right, regardless of that court, to determine and dispose of liens upon it, as it may see proper, and merely transmit the final proceeds to the court of primary jurisdiction. And while mindful of the great weight attaching to the dictum in this case and to the views of the learned and distinguished judge who wrote the opinion, which are always entitled to great weight, I am constrained to conclude that the view expressed obiter in this opinion that the court of ancillary jurisdiction had such plenary power in the administration of liens upon the property of the bankrupt, is in conflict with the subsequent opinion of the Supreme Court in Lazarus v. Prentice, 234 U. S. 263, 266, 267, 34 Sup. Ct. 851, 58 L. Ed. 1305, in which it was said that the filing of the petition and adjudication in the bankruptcy court of original jurisdiction brought the property of the bankrupts whereever situated into custodia legis, so that the court of original jurisdiction "acquired the full right to administer the estate under the bankruptcy law," and that under the amendment of 1910 the court of ancillary jurisdiction had authority to appoint a receiver and take charge of the bankrupt's estate within its jurisdiction "in order that the same might be turned over to the bankruptcy court having jurisdiction for administration." As to the authority of a court of bankruptcy to order the sale of the bankrupt's land in another district, see Robertson v. Howard, 229 U. S. 254, 261, 33 Sup. Ct. 854, 57 L. Ed. 1174, and Orinoco Iron Co. v. Metzel (6th Cir.) 230 Fed. 40, 46, 144 C. C. A. 338.

I therefore think it clear that both under the express terms of the amendment of 1910, which merely confers ancillary jurisdiction "in aid of" a receiver or trustee appointed in the court of primary jurisdiction, and the broad rule stated in Lazarus v. Prentice, supra, where the court of ancillary jurisdiction takes possession of mortgaged property in aid of a bankruptcy court of primary jurisdiction, it has no authority to determine, regardless of the court of primary jurisdiction, whether the mortgage upon such property should be enforced through the bankruptcy court or in independent proceedings by the mortgagee or to release the mortgaged premises to the mortgagee for the purpose of such independent foreclosure; such proceeding obviously not being in aid of the receiver or trustee in the court of primary jurisdiction, but in my opinion in derogation of the rights and authority of the court of primary jurisdiction, which is vested with sole authority to determine this question in the administration of the bankruptcy estate, and in derogation of the rights of the trustee appointed by it.

I find nothing in conflict with this view in Re Farrell (6th Circ.) 201 Fed. 338, 119 C. C. A. 576, in which it was merely held that an ancillary court of bankruptcy was authorized to hear and determine a plenary suit brought by a trustee in bankruptcy against parties claiming to hold property of the bankrupt as custodian for lien claimants who had brought suit to enforce the lien in a State court more than eighteen months prior to the filing of the bankruptcy; the right of the State court under such circumstances to retain jurisdiction of such suit and property obviously going merely to the right of the ancillary court to seize the property at all as the property of the bankrupt, and not involving in anyway the question of the enforcement of such prior liens in the bankruptcy court or any administrative question arising in the primary bankruptcy proceeding.

[2] Furthermore, even if this court had authority to allow the foreclosure of the mortgage, without regard to the determination of the court of primary jurisdiction, it is clear that whether such independent foreclosure should be permitted involves many questions in reference to the nature and value of the property, the amount of liens upon it and other considerations which are to be determined as administrative questions arising in the bankruptcy proceedings, and for the purpose of realizing the greatest amount obtainable from the property for general creditors of the bankrupt estate without prejudice to the rights of the mortgage holders. These questions, however, which are of a purely administrative character, can obviously be best determined in the court of primary jurisdiction having the legal custody of all the assets of the bankrupt and full knowledge of the condition of the estate. And I therefore conclude that even if the court is authorized to grant the relief requested, it should not, in the exercise of sound discretion, grant such leave, but should remit the petitioner to make application for such leave to the court of primary jurisdiction. This is especially true when the court of primary jurisdiction has, through its referee, determined that the best interests of the estate require that the mortgaged property should be sold by the court of bankruptcy itself free from all liens. It is, of course, not intended by this to adjudge that the New York court of bankruptcy may directly enforce such order of the referee without notice to the Trust Co., or without the aid of ancillary proceedings in this district; but it is obvious that if the substantial rights of the Trust Co. are in any way prejudiced by the order of the referee, complete relief may be had by it by intervention in the New York proceedings and proper application therein for review of the order of the referee.

I may add that I do not regard either the opinion or order of the District Court of the Eastern District of Pennsylvania as in conflict with the view herein expressed, that court not having determined either in its opinion or in its order whether the court "having jurisdiction of the mortgaged premises" was the District Court of New York or this court; while on the contrary a decision of this question was apparently expressly intended to be reserved, as shown by the statement in the opinion of the court that the "tribunal best situated to pass upon the question involved is the court having control of the assets of

the bankrupt estate or the court within whose jurisdiction the property is situated."

An order will accordingly be entered dismissing the petitions of the Trust Co. and others, and denying leave to file an independent bill, as prayed.