## In re GALLIMORE.

(District Court, N. D. Georgia.　January 4, 1927.)

**1. Courts ☞493(1)—Under rule of comity, first court in time is first in right, though not first to actually seize property; "first in time."**

A fundamental rule of comity is that the court that is first in time is first in right and that court is "first in time" which first entertains a valid proceeding, to complete which will require possession of the specific property, whether that court is first actually to seize it or not.

**2. Courts ☞497—Court's right to possess property draws to it right to hear all disputes.**

The right of a court to possess property draws to it the right to hear all disputes touching its ownership.

**3. Courts ☞493(1)—Litigant may select his forum, if it has jurisdiction.**

A litigant has the right to select his forum, and if it has jurisdiction, that court may not surrender it.

**4. Bankruptcy ☞20(2)—Where receiver was appointed by state court, prior right of bankruptcy court to possession of property would be waived to permit ownership to be determined by state court.**

A voluntary bankrupt scheduled as his only property certain building lots and buildings he had erected thereon, subject to liens in favor of the vendors for the purchase price and advances made toward the buildings, which probably equaled the sale value of the property. Subsequently mechanic's lien claimants commenced suit in a state court, alleging, that the sale of the lots to bankrupt was colorable and fraudulent, and that the vendors were the real owners and liable for their claims. The state court appointed a receiver, who took possession of the property, which was still in possession of bankrupt, and the court refused to surrender it to bankrupt's trustee. *Held*, that the bankruptcy court had the right of possession, but would not enforce the right until the question of ownership had been determined by the state court.

In Bankruptcy. In the matter of E. R. Gallimore, bankrupt. On petition of trustee for order requiring receiver of state court to turn over property. Denied, without prejudice to renewal.

W. J. Davis, Jr., of Atlanta, Ga., for trustee in bankruptcy.

Efurd & Phillips, of Atlanta, Ga., for bankrupt.

A. S. Grove, of Atlanta, Ga., for Turner and Jones.

Bryan & Middlebrooks, Pearce Matthews, Geo. B. Rush, and Augustine Sams, all of Atlanta, Ga., for state court receiver and materialmen.

SIBLEY, District Judge. On August 7, 1926, Gallimore prepared and swore to his petition and schedules in voluntary bankruptcy, and on August 10th filed them and was adjudicated a bankrupt. Of about $129,000 of debts, all save $657 related to the purchase and improvement of 12 building lots in Olympian Heights, near Atlanta, and were scheduled as being secured or having priority. Of the $657 of personal debts, $500 are scheduled as being secured, so that only $157 is wholly unsecured. The only assets scheduled were the said improved lots, sufficiently described. Some unused building material was later added by amendment.

On August 13, 1926, Security Plumbing Company, one of the creditors scheduled as secured by a materialman's lien, filed a bill in Fulton superior court against Gallimore and H. H. Turner and L. L. Jones, the latter being the owners of the building lots who had made contracts of sale thereto severally to Gallimore, retaining the title for the security of the purchase money (none of which has ever been paid) and for the security of money to be advanced for pay rolls in erecting buildings agreed to be built by Gallimore on each lot. The case set up in this bill is in substance that the contracts of sale of the several lots were only colorable, neither party to them intending that any purchase money should ever be paid, but that Gallimore should buy materials on his credit, improve the property, and then become bankrupt, when Turner and

Jones, by their large and superior claims for purchase money and advances, both being greatly and fraudulently exaggerated, would buy in the property so improved, excluding the materialmen from realizing anything for what they had contributed. The bill averred that in reality Gallimore was no purchaser, but only the agent of Turner and Jones to purchase materials and improve the properties, and the prayers were for the appointment of a receiver for the property so dealt with, and for its preservation as property subject to liens and in danger of depreciation and dissipation (though Turner and Jones are not alleged to be insolvent), and that the other lienors be suffered to become parties, that their debts be set up against Turner and Jones and their liens against the property, and that the property be administered in equity as that of Turner and Jones for the satisfaction of all having liens upon it.

On the same day a temporary receiver was appointed and took possession of the property, theretofore in the physical custody of Gallimore. Later other lien creditors filed similar bills or intervened. When the trustee in bankruptcy was elected, by direction of the court of bankruptcy he applied to the state court for possession of the property scheduled for administration. The state court declined to turn the property over to the trustee, and he now petitions the court of bankruptcy to compel the state court receiver to relinquish the property. Several of the lien creditors, apparently preferring the bankruptcy jurisdiction, or not esteeming the bill in the state court to be maintainable, have intervened in the bankruptcy court.

The particular order now applied for seems to me to be improper, for one court should not assume to give orders to the officer of another court. The end sought could, however, be attained by injunctions against interference with the trustee, the court of bankruptcy having undoubted power to arrest proceedings in a state court by injunction. A consideration of the merits of the situation ought therefore to be undertaken.

[1] When a state and a federal court at the same time undertake to exercise separate jurisdiction, requiring each to administer upon and therefore to possess the same specific property, embarrassing questions arise. To prevent conflicts as to which of the two courts should take and keep the property and administer it, the rules of comity are established and must be regarded. Of these the most fundamental is that the court that is first in time is first in right. And that court is first in time which first entertains a valid proceed-

16 F.(2d)—51

ing to complete which will require possession of the specific property, whether that court is first actually to seize it or not. Upon a careful examination of the decisions, both of the Supreme Court of Georgia, which bind the state court, and of the higher federal courts, which bind the District Court, this conclusion was established in Patterson v. Veasey (D. C.) 295 F. 163. This rule is conceded by the judge of the state court in his opinion on this matter, but the fact that the state proceeding goes on the theory of the property not being that of the bankrupt, and seeks relief against Turner and Jones, which the bankruptcy court could not give, was thought to alter the matter. It was also stated in the opinion that if, upon trial, it should appear that the property was really, and not merely colorably, sold to Gallimore, that the state court should then turn it over to the bankruptcy court, but if the building enterprise was held to be really that of Turner and Jones, and they were held for the debts as undisclosed principals, there would be nothing for the bankruptcy court to do about the property; and it is said that if the bankruptcy court should obtain the property, and the contention of the materialmen should in that court be sustained, the result would be that the property would have to be returned to the receiver of the state court.

These considerations and consequences do not seem to me to create a sufficient distinction to reverse the rule. The bankruptcy petition, with its schedules describing this property, and its prayer for its administration by the court, was the equivalent of a prior application for a receiver for it, and the adjudication served to show the purpose of the bankruptcy court to exercise jurisdiction over it. The personal judgments sought in the state court against Turner and Jones are, of course, not in derogation of the bankruptcy jurisdiction. Kline et al. v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077. The claim that the property was not that of the bankrupt, nor the debts of the litigants debts against him, of course is an adverse claim, one which, if made by proceedings in the state court prior to the bankruptcy, would not have been superseded by the bankruptcy, but, when urged against the property itself by a subsequent proceeding, should be urged in the court having the first right to seize and control the property, in this case the bankruptcy court. [2] The right of the court to possess the property, by familiar rules, draws to it the right to hear all disputes touching its ownership. Kline v. Burke Construction Co., supra, and cases cited. This contention would

not be a part of the bankruptcy proceeding proper, unless it resulted in a finding that the bankrupt in fact had an interest in the property and was in possession of it in his own right, and that the debts against it were his debts, in which case the superior quality inherent in bankruptcy jurisdiction as arising under the Constitution of the United States would attach. A finding otherwise would result in a judgment surrendering custody of the property to the state court.

I thus hold that, under the principles of comity, which are binding law between rival courts, the property should be surrendered to the bankruptcy court as the one first assuming to seize it, and that court should first hear the question as to who really owns it and whose creditors the materialmen are.

[3] Moreover litigants have a right of forum. While courts, whatever their constitution and procedure, should on the same facts reach the same conclusion, in truth they often do not. A case that can be won before a jury sometimes cannot be won before a chancellor and vice versa. A case that can be won in a federal court, with jurors from a distance, cannot sometimes be won before a local jury. The speed and flexibility of the bankruptcy procedure may be important. A sale by a sheriff may involve a sacrifice of property that can be avoided in one by a trustee. The right to some of these advantages is guaranteed even by provisions of the federal and state Constitutions. A court cannot dispense with them at its own preference, or decline to exercise or enforce its jurisdiction. Wrongly to deny these rights to a litigant is substantial and reversible error.

[4] Yet in this case no litigant is entitled to claim as a right the federal forum. The prior invocation of the bankruptcy jurisdiction was not by any of the now active litigants. Being lien creditors, they could not, as such, have instituted the proceeding. The bankrupt himself has nothing at stake. He will not be affected adversely by a decision that he does not owe these creditors or own the property in contest. The trustee, who represents only the small, unsecured debts which elected him, has no real interest, for by the weight of the evidence the property is not worth more than the cost of the lots and the improvements on them. The bankrupt has made no investment in them except his time, and he has drawn fair pay for that. Who should earn the fees for administration is not a consideration that ought to influence a court. The real litigants are Turner and Jones, on the one hand, and the materialmen on the other, all citizens of the same state. Though some of the material-

men have preferred the bankruptcy forum, their real interest is to pursue Turner and Jones, who are solvent, if that can successfully be done.

The questions at issue are questions of state law, some of them doubtful, and best to be settled by state tribunals, and questions of intent and fraud, which are peculiarly appropriate for jury trial. If this court could, over the contrary decision of the state court, obtain possession of the property, it would be after delay and adjustment of expenses, and the only result might be eventually the handing of it back to the receiver. The trustee is accorded the right to intervene in the state court. A prompt trial should there be had. If it be there determined that Gallimore does not owe for these materials and lots, and consequently does not own them, or the houses built of and on them, that should end the matter. If it be determined that Gallimore acted for himself, owes for the materials, and owns, subject to the secured debts against them, the houses and lots, the state court is engaged to turn the property over to the trustee to be administered. Only confusion, conflict, expense, and delay could result from an attempt at coercive measures, and they will at present be refused, without prejudice to further consideration of the matter, should the situation materially alter.