**In re LOOKOUT MOUNTAIN HOTEL CO.**

District Court, N. D. Georgia, Rome Division.
March 17, 1931.

W. E. Norvell, Jr., of Nashville, Tenn., and Jones, Evins, Powers & Jones, of Atlanta, Ga., for State Court Receiver Thos. W. Bryan.

Alston, Alston, Foster & Moise, of Atlanta, Ga. (Selden Bacon and Saul S. Myers, both of New York City, of counsel), for trustee in bankruptcy.

BARRETT, District Judge.

The chronology of this litigation is as follows:

July 29, 1930, the petition for foreclosure of a deed of trust conveying Georgia land to secure $650,000 of bonds and for the appointment of a receiver in the state court was filed. The petition was sanctioned and ordered filed, and the hearing upon the petition for appointment of a receiver and injunction was postponed to September 15, 1930.

September 5, 1930, a petition in involuntary bankruptcy was filed in the District Court of the United States for the District of Delaware, and a receiver was appointed by such court on that day.

September 10, 1930, upon petition of such receiver, the District Court of this district appointed him as receiver.

September 15, 1930, the state court appointed a receiver.

September 27, 1930, the hotel company was adjudicated a bankrupt in Delaware.

October 3, 1930, the petition under consideration was filed by the state court receiver praying that this court direct its receiver to turn over the property to the state receiver.

November 21, 1930, a trustee in bankruptcy was elected and qualified.

1. The trustee in bankruptcy, the same individual as the receiver, is now a party to this proceeding as trustee, and challenges the jurisdiction of this court in the premises. Such challenge is thus stated in the brief of such trustee: "The petition at bar can be entertained properly only by the United States Court in the District of Delaware as the bankruptcy court of primary jurisdiction. The petition at bar being addressed to this court must, therefore, be dismissed on the ground of lack of power even aside from its untenability on the ground of discretion."

It is important to realize that the question for determination is possession, that the proceeding to foreclose the trust deed in the state court had been instituted more than a month before the filing of the involuntary petition in bankruptcy in Delaware, and that the petition in the case at bar was against a federal receiver appointed in ancillary pro-

ceedings in this court instituted by the receiver of the primary court before the qualification of the trustee.

The touchstone as to jurisdiction is ascertained, not only by facts which would appeal to the discretion of the court to interfere with the action of the state court, but also by facts that would not appeal to such discretion. Facts that would not justify interference would seem to require that, upon appropriate application, inadvertent error in appointment of a receiver should be rectified at once by delivery of possession to the receiver of the state court.

There are two rules whose validity are recognized by all parties to the case at bar:

(a) "When a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession." Isaacs, Trustee, v. Hobbs Tie & Timber Company, 51 S. Ct. 270, 272, 75 L. Ed. ——, decided by the Supreme Court of the United States February 24, 1931.

(b) "To prevent conflicts as to which of the two courts should take and keep the property and administer it, the rules of comity are established and must be regarded. Of these the most fundamental is that the court that is first in time is first in right. And that court is first in time which first entertains a valid proceeding to complete which will require possession of the specific property, whether that court is first actually to seize it or not." In re Gallimore (D. C.) 16 F.(2d) 800, 801.

(I do not forget the contention of the trustee in bankruptcy that the courts are not concurrent, but that the bankruptcy court is paramount. That may be cogent or even convincing as to the final conclusion, but jurisdiction alone is now being considered.)

The ancillary jurisdiction of this court has been recognized and invoked by the receiver of the primary court in aid of the bankruptcy administration. Would any one insist that this court when its aid is thus invoked could not exercise its independent judgment? That, if it could not take such action as would in the opinion of the primary court be in its aid, it had no jurisdiction? If this court had jurisdiction to take possession, why has it not jurisdiction to correct the error, if error it be, of taking possession in the first instance? Why was it not its duty upon request to have immediately returned the property if taken in the first instance by error?

The fact of the same person's being the receiver of this court and also the trustee in bankruptcy is immaterial. Whatever else he may be, he is an officer of this court, and would manifestly violate his duties as such if he relinquished possession to any one—even himself acting in any other capacity—without an appropriate order of this court.

What is the effect, if any, of the qualification of the trustee in bankruptcy upon the jurisdiction of this court? The most recent statement by the Supreme Court of the rights of a trustee is in the Isaacs Case, supra, as follows: "Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U. S. 254, 259, 260, 33 S. Ct. 854, 57 L. Ed. 1174; Wells v. Sharp (C. C. A.) 208 F. 393; Galbraith v. Robson-Hilliard Grocery Co. (C. C. A.) 216 F. 842."

Let it be noted that the trustee has not by his qualification possession, but "the title and right to possession." The method of protection of such rights of the trustee when the property is within, and also when it is without, the district of the primary bankruptcy court is, also disclosed in such Isaacs Case, as follows:

"Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka [(D. C.) 131 F. 1004], supra; Nisbet v. Federal Title & Trust Co. (C. C. A.) 229 F. 644.

"The exercise of this function necessarily forbids interference with it by foreclosure proceedings in other courts, which, save for the bankruptcy proceeding, would be competent to that end. As mortgaged property ordinarily lies within the district in which the bankruptcy court sits, and the mortgagee can consequently be served with its process,

the procedure usually followed is for that court to restrain the institution of foreclosure proceedings in any other. Where the land lies outside the limits of the district in which the bankruptcy court sits, ancillary proceedings may be instituted in the District Court of the United States for the district in which the land is, and an injunction against foreclosure issued by the court of ancillary jurisdiction. In re Patterson Lumber Co. [D. C.] 228 F. 916; Id. (D. C.) 247 F. 578. Compare Security Mortgage Co. v. Powers, 278 U. S. 149, 49 S. Ct. 84, 73 L. Ed. 236."

Is the jurisdiction in this case dissimilar from that where the primary court seeks the aid of the ancillary court for injunction? Finally, must not this court "exercise jurisdiction," even if it orders its receiver to deliver possession to the trustee in bankruptcy?

In concluding that this court has jurisdiction, let the trustee be assured that I have not failed to study the cases cited to support his contention, the most pertinent of which is In re Patterson (D. C.) 247 F. 578. Even in that case a vital distinction is that there the trustee appointed in New York was not only in possession of the land in Tennessee but had obtained an order from the bankruptcy court in New York to sell the land free of liens before the trustee under the deed petitioned the District Court in Tennessee to permit him to foreclose.

2. Shall possession be delivered to the state receiver or to the trustee in bankruptcy?

The following state and federal decisions favor the claim of the state receiver:

"If, under foreclosure proceedings, the state court appoints a receiver to take charge of the mortgaged property, and the defendant is subsequently adjudicated a bankrupt, the trustee is not entitled to the possession of the mortgaged property, but can only claim the surplus remaining after the payment of the secured debt." Merry v. Jones, 119 Ga. 643, 646, 46 S. E. 861, 862.

"Pending suits to enforce specific liens or to deal with specific property (other than insolvency proceedings) are generally not to be interfered with by the bankruptcy court, unless to have the trustee intervene." In re Barrett & Co. (D. C.) 27 F.(2d) 159, 160; to the same effect Judge Sibley In re Moore (D. C.) 42 F.(2d) 475, 477. See, also, Parks, Trustee, v. Baldwin, 123 Ga. 869, 51 S. E. 722; Nelson, Trustee, v. Spence, 129 Ga. 35, 58 S. E. 697.

The rights of the trustee in bankruptcy are as stated in the Isaacs Case, supra.

The trustee in bankruptcy insists that he should have possession for the following reasons:

(a) "The state court was without personal jurisdiction of any defendant save only J. I. Carter, and as to him the return of service was defective."

(b) The instrument securing the bonds was never properly recorded.

(c) The equity in the property securing the bonds is of substantial value.

(a) The attacks on the jurisdiction and service in the state court are not in my opinion sufficient to justify this court in declaring such action in appointing a receiver a nullity. It was a court of plenary jurisdiction. At least one defendant was before it. Service, if defective, might be cured. The res was within its territorial jurisdiction. See Empire Trust Co. v. Brooks (C. C. A., Fifth Cir.) 232 F. at page 643.

(b) The argument to sustain the impropriety of the record of the instrument securing the bonds may be thus condensed: Such instrument is a "security deed" under section 3306 of the Code of Georgia of 1926. In order to admit such security deed to record, it "shall be attested or proved in the manner now prescribed by law for mortgages," section 3308 Id. A mortgage "must be executed in the presence of, and attested by, or proved before, a notary public or justice of any court in this State, or a clerk of the superior court (and in case of real property by one other witness), and recorded," section 3257. Section 4203 of such Code, "To authorize the record of a deed to realty or personalty, when executed out of this State," does not apply to "security deeds." The deed under consideration was executed out of the state of Georgia, and was attested by a notary public of such state of its execution and another witness. Section 3264 of such Code reads as follows: "All the rules prescribed for the probate of deeds to land, where the witnesses are dead, insane, or removed from the State, or to the acknowledgment before or attestation by consuls or commissioners, shall apply to the probate of mortgages," and does not apply to the deed in question because attestation was not by a consul or commissioner.

In order that such reasoning be convincing, it is essential that a deed of trust to secure an issue of bonds be a "security deed" as prescribed by such section 3306. Other-

wise it must come within the ambit of "a deed to realty or personalty" and be governed by section 4203, supra.

Security deeds came into existence in 1871, and it may well be that such enactment was caused by the case of Stokes v. Hollis, 43 Ga. 262 (July 1871), holding that a deed in form was in substance a mortgage, and trover could not be founded thereon. Whatever the origin, the Supreme Court of Georgia has thus described it: "The security deed seems to be peculiar to the law of this state, and its legal status has been fixed by judicial decisions considering alone the nature of the instrument, and in many cases paying little or no regard to analogies." Shumate v. McLendon, 120 Ga. 396(3), 48 S. E. 10.

That "security deeds" are sui generis was further recognized by such Supreme Court in Jewell v. Walker, 109 Ga. 241, 34 S. E. 337 (1899). Judge Sibley, In re Hammett (D. C.) 286 F. 392, 394, says: " * * * The deed is of a class peculiar to the Georgia statute law known as a security deed (Park's Code, 3306)."

The Georgia codifiers manifestly recognized such distinction, for, "Fourth Title—of Relations Arising from Contracts," security deeds there denominated "Sales to Secure Debts" are in chapter 6, and "Trust Deeds to Secure Debts" are in chapter 7.

This incidental comment may be here pertinent. The trustee in bankruptcy urges that, inasmuch as section 3311 of such chapter 7 creates a method of foreclosure of such "Trust Deeds to Secure Debts," no foreclosure can be had unless the conditions of such section be complied with, that one of its conditions is that foreclosure must be requested by two-thirds in amount of the indebtedness secured, and that two-thirds had not so requested. This section has for me an entirely different meaning. I think it means that, upon request of two-thirds, but not otherwise, this unusual method of foreclosure may, but not must, be followed. Under other conditions, other methods must be pursued. Surely it cannot be seriously urged that the failure of two-thirds to request can absolutely defeat the rights of the other one-third.

My conclusion is that the deed in question is a "Trust Deed to Secure Debt," is not a "Security Deed" under section 3306, and is properly recorded.

(c) The charge that there is an equity of value to the general creditors, even though the deed of trust be held valid, is apparently made in good faith and with ample justification.

3. The ultimate decision as to the validity of the record of the deed of trust and of the value of the equity should be made by the court of primary jurisdiction. The allegations and the evidence are sufficient to justify this court in enjoining the state court from proceeding with the sale of the property if such were necessary. It would be inexcusable folly to deliver possession to the state receiver and then proceed to forbid his action under the allegations and facts now developed.

It is therefore ordered that the petition of the state receiver for possession of the property is hereby declined.