### RAY *v.* NORSEWORTHY.

Although District Courts of the United States, sitting in bankruptcy, have power to order a sale of the real estate of the bankrupt which he has mortgaged, in such a way as to discharge it of all liens, and although as a general thing, if they order a sale so that the purchaser shall take a title so discharged the purchaser will have a title wholly unincumbered, yet to pass in this way an unincumbered title of property previously mortgaged, it is indispensable that the mortgagee have notice of the purpose of the court to make such an order; or that in some other way he have had the power to be heard, in order that he may show why the sale should not have the effect of discharging his lien. And if a sale be made without any notice to him, his mortgage is not discharged.

ERROR to the Supreme Court of Louisiana.

The case was thus:

The first section of the Bankrupt Act enacts:

" That the several District Courts be and hereby are constituted courts of bankruptcy. .... And the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and *liquidation of the liens and other specific claims thereon;* to the adjustment of the various priorities and conflicting interests of all parties, and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors."

The twentieth section enacts:

" When a creditor has a mortgage or pledge of real or personal

property, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of a debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made *in such manner as the court shall direct.*"

With these provisions of the Bankrupt Act in force, W. A. Parks owning a plantation in Louisiana, sold the same to one Brigham, who, in consideration of the sale, gave his note for $11,666.66 to Parks, and to secure the note gave also what is called, in Louisiana, " a special mortgage with vendor's privilege ;" a sort of security apparently like a common-law mortgage for purchase-money.

Parks sold for value this mortgage with its privileges to one Norseworthy (the transfer being duly recorded), and soon afterwards died. Brigham, the purchaser of the land, was declared bankrupt, and his assignee, one Norton, filed a petition in the District Court of the United States at New Orleans, setting forth certain facts, though exactly what facts—as the petition itself was not produced—did not appear. So far as might be inferred from a recital and order hereinafter quoted, made upon the petition, it rather seemed that the petition represented that Parks had owned the land and sold it to Brigham, taking the mortgage, &c. ; that Brigham was now bankrupt, and that he, Norton, was his as. signee ; that it was necessary to sell the land to pay the debts of the bankrupt; and praying an order of sale and power to apply the proceeds to paying, in discharge of special mortgages, to one J. D. Denegre, $7091 ; to Parks, $11,666.66 ; and to one R. Nugent, $2044. Parks had, at this time, been dead for more than a year, and his estate had been sold. Denegre too was dead. Norseworthy lived in Texas, several hundred miles from New Orleans. Whether the fact of his interest in the mortgage originally owned by Parks was in any way stated, or indeed whether his name was mentioned in the petition in any way did not appear. But it appeared that a notice of the sale, intended to be a notice to him, had been sent through the mail by the assignee in bankruptcy,

to a person supposed by the said assignee to be Norseworthy's attorney, and to represent him, but who, in fact, did not represent him at all in any way. Neither did it appear what rule was made or what return had been made by the marshal.

Although, as above said, the petition itself was not produced, nor the rule, nor the marshal's return, the following proceedings upon the petition in the court of bankruptcy were produced:

"The petition and rule filed by the assignee, came up, Mr. H. D. Stone, *for the assignee;* and it appearing to the satisfaction of the court that the service required by law has been duly made, and that *the facts set forth in the petition are true;* it is ordered that the prayer of the petition be granted and the rule be made absolute; that the assignee be authorized to sell the bankrupt's property following, to wit:"

[Here followed a description of the property mortgaged.]

"It is further ordered that said assignee be also authorized to cancel all mortgages, liens, judgments, and incumbrances resting on said property, and particularly those in favor of the estate of J. D. Denegre for $7091, being a special mortgage; the special mortgage and vendor's privilege in favor of W. A. Parks, for $11,666.66, and the special one in favor of R. Nugent for $2044, reserving to said parties and to all other persons in interest all the rights in law to the proceeds according to their rank and priority."

The assignee, in pursuance of the already-quoted order, sold the land at public sale, and it came finally in the hands of one Ray.

Norseworthy now sought, in one of the State courts of Louisiana and by some of the proceedings usual in the civil-law practice, or in the code of the State just named, to subject the land to the payment of his mortgage for $11,666.66.

To establish his case, he produced his mortgage and transfer.

The other side, to show a discharge of the mortgage, put in evidence the recital and order of the District Court, quoted just above, but did not produce or put in evidence

the petition on which the order and proceedings were had, nor the rule, nor the marshal's return.

One of the issues in the court in which Norseworthy made his proceeding was, whether Norseworthy received a proper notice or was legally made a party to the proceeding under which the assignee attempted to sell the property free of his mortgage.

That court held that he had not received a proper notice, and that his rights were thus unaffected by the sale. The Supreme Court of the State was of the same opinion, and from its judgment made on that view the case was now here.

It was admitted in this court, on both sides, to be plain, alike under the first and the twentieth sections above quoted of the Bankrupt Act, that under proper proceedings—which, of course, included a notice properly given to parties in interest—the District Court had authority to order the sale of the property free of liens. So that the only questions in the case were: 1st. Whether Norseworthy was to be taken as having received proper notice, and if not, 2d. Whether the want of it was fatal to the discharge of his lien.

*Messrs. Durant and Horner, for the plaintiff in error:*

The Supreme Court of Louisiana seeks to withdraw this case from the operation of the admitted rule that the District Court sitting in bankruptcy has authority to order the sale of the property in question free of prior incumbrances, on the ground that the mortgage-creditor, Norseworthy, did not receive proper notice, and was not legally made a party to the proceedings resulting in the order to sell the property in question free from his prior mortgage.

The answers to this are manifold:

1st. The fact that Norseworthy was not a party to the rule is not sufficiently proved, and on him was the burden to adduce sufficient proof. The recital in the order of sale is, " that it appears to the satisfaction of the court that the service required by law has been duly made." If by law Norseworthy was required to be served, it is here recited that he was served, and duly served.

2d. Assuming, however, that Norseworthy was a stranger to the proceedings in bankruptcy, he could not annul them *collaterally*. The proceedings are *in rem* and all the world are parties.

The only question before the State court, which could legally be agitated, was the competency of the District Court of the United States for the Eastern District of Louisiana. This competency cannot be denied. The decision of a court of a peculiar and exclusive jurisdiction must be completely binding upon the judgment of every other court in which the same subject-matter comes incidentally in controversy.*

Norseworthy's relief, therefore, was to be found in the national court. A rule for a new trial, an appeal, an action of nullity, &c., &c., even an application to the extended supervisory jurisdiction of the Circuit Court of the United States, under the national Bankrupt law, were all open to him *there*, and *not elsewhere*. In a more important case than this it was decided that the State of Texas was bound to appeal from an order of court directing a receiver to sue, and could not contest his right to do so *collaterally*.†

3d. The discharge in bankruptcy freed Brigham from all liability for the debt due Norseworthy. The debt was extinguished, and under Louisiana law all the concomitants of it perished. There could be no hypothecary right remaining in Norseworthy after the sale of the property by the bankrupt court and the final discharge of the bankrupt.

*Messrs. E. T. Merrick and G. W. Race, contra:*

1. An issue was formed on the question of fact whether Norseworthy was rightly served, and was decided against the plaintiff in error by both the inferior State court and by the Supreme Court of Louisiana.

And it is this question of *fact* which is brought here by the writ of error, and this court is requested to re-examine

---

* Gelston *v.* Hoyt, 3 Wheaton, 315.
† Davis *v.* Gray, 16 Wallace, 219.

the proofs and testimony and find the facts differently from the courts having jurisdiction of them.    This it will not do.

2. If the *petition* had been put in evidence by the assignee in bankruptcy, and it had appeared that Norseworthy was a party named in it, there might be some value in the recital subsequently made, that it appeared to the satisfaction of the court that service had been made.    But he puts in evidence the recital and the order made on the petition, but withholds the petition itself, the rule, and the marshal's return.    The inference is irresistible that Norseworthy's title nowhere appears in it.    Of what worth then is the recital?    What is put in evidence, if it shows notice at all and to anybody, fails to show to whom the notice was.    It may be to any one man as well as to any other.

Parks was dead, and his property sold in 1868.    It cannot, therefore, be pretended that Norseworthy could be bound by any imaginary notice to Parks, who had by public act sold the mortgage in his lifetime.

The proofs adduced on the trial in the lower court by the plaintiff and passed upon by the District and Supreme Courts show that instead of serving a summons, citation, or notice on Norseworthy (the holder of the mortgage), the notice was sent to a person who was not his attorney, nor authorized to accept service for him.

This is not due process of law.    A party who never appeared in the bankrupt court, whose rights were of record in the public archives of the recorder's office, was not to be divested of real rights by chance notices served on third parties not representing him, through the mail.

The bankrupt court being one of special and limited jurisdiction, it was incumbent that those who pretend to have divested the legal rights of third parties, should clearly show by the record such formal proceedings as the law requires, and such service of process as was needed for the exercise of such jurisdiction.

The discharge of the original mortgagor from all his debts would not affect a lien on his estate, and especially when the estate on which the lien was had passed to another owner.

Mr. Justice CLIFFORD delivered the opinion of the court.

The theory of the plaintiff in error is that the title of the petitioners under the first mortgage and privilege was extinguished by the decree of the bankrupt court, and that the plaintiff acquired an absolute title to the land from the assignee in bankruptcy, discharged of all prior incumbrances and privileges.

1. Jurisdiction of the bankrupt courts extends to all cases and controversies arising between the bankrupt and any creditors who shall claim any debt or demand under the bankruptcy, to the collection of all the assets of the bankrupt, to the ascertainment and liquidation of the liens and other specific claims thereon, to the adjustment of the various priorities and conflicting interests of all parties, and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and the due administration of the assets among all the creditors.*

Powers of like kind were conferred upon the bankrupt courts by the former Bankrupt Act, and the provision in that regard is expressed in substantially the same terms.†

Cases involving the construction of that provision were several times removed into this court for re-examination, in all of which it was held that the power conferred extended to all cases where the rights, claims, and property of the bankrupt, or those of his assignee, are concerned, because they were matters arising under the act and were necessarily involved in the due administration and settlement of the bankrupt's estate.‡

So where the bankrupt court ordered the mortgaged premises to be sold, and directed that the mortgages should be cancelled and that the property should be sold free from incumbrance, rendering to the parties interested their respective priorities in the proceeds, this court decided that the bankrupt court did not exceed their jurisdiction, and affirmed their action.§

---

\* 14 Stat. at Large, 517.                  † 5 Id. 445.

‡ Ex parte Christy, 3 Howard, 313; Norton *v.* Boyd, Ib. 437.

§ Houston *v.* City Bank, 6 Howard, 504.

Corresponding decisions were made by the State court in construing the former Bankrupt Act, which are equally applicable to cases like the one before the court.*

Even if, by the true construction of the first section of the act, any doubt could arise as to the power of the bankrupt court to authorize such a sale, it has been well held that it may be derived from the twentieth section of the same act. By that section it is provided that a creditor having a mortgage or pledge of real or personal property, or a lien thereon, for the security of a debt, shall be admitted as a creditor *only* for the balance of the debt, deducting the value of such property to be ascertained by agreement between him and the assignee, *or by sale thereof, to be made in such manner as the court may direct.*†

Beyond all doubt the property of a bankrupt may, in a proper case, be sold by order of the bankrupt court free of incumbrance, but it is equally clear that in order that such a proceeding may be regular and valid the assignee must apply to the bankrupt court for an order to that effect, and must set forth the facts and circumstances which it is supposed justify the application, that the judge may decide whether or not the application shall be granted. Secured creditors in such a proceeding must have due opportunity to defend their interests and consequently must be properly notified and summoned to appear for that purpose.‡

None of these conditions were fulfilled in this case. Instead of that the State court finds that the petitioner was never properly notified and that he was not made a party to the proceeding resulting in the order to sell the property in question free of his prior mortgage, and it was upon that ground that the State court decided that his rights were unaffected by the proceedings.

Concede to the fullest extent the powers of the bankrupt

---

* Clark *v.* Rosenda, 5 Robinson (Louisiana), 39; Conrad *v.* Prieur, Ib. 54; Lewis *v.* Fisk, 6 Id. 162.

† In re Kirtland, 10 Blatchford, 515.

‡ Foster *v.* Ames, 1 Lowell, 316; Willard *v.* Brigham, 25 Louisiana Annual, 601.

court to do everything specified in the Bankrupt Act, still it is clear that the mortgage and privilege of the petitioner could not be cancelled and displaced without notice nor without an opportunity to be heard, nor could the proceeds of the sale be adjudged to a junior mortgagee with or without notice, unless for some cause other than what is disclosed in the record.* Notice in some form must be given in all cases, else the judgment, order, or decree will not conclude the party whose rights of property would otherwise be divested by the proceeding.†

No man is to be condemned without the opportunity of making a defence, or to have his property taken from him by a judicial sentence without the privilege of showing, if he can, that the pretext for doing it is unfounded. Every person, as this court said in the case of *The Mary*,‡ may make himself a party to an admiralty proceeding and appeal from the sentence, but notice of the controversy is necessary in order to enable him to become a party.§

Authorities to the same effect are very numerous, nor is there any well considered case which gives any support to the proposition that the judgment, order, sentence, or decree of a court disposing of property subject to conflicting claims will affect the rights of any one not a party to the proceeding and who was never in any way notified of the pendency of the proceeding.‖

Such a sale made in such a manner without notice may, under some circumstances, be set aside as violating the rights of the prior mortgagee, but the mortgagee may, if he

---

\* Peychaud *v.* Bank, 21 Louisiana Annual, 202.

† The Lottawanna, 20 Wallace, 201; Nations *v.* Johnson, 24 Howard, 205; Harris *v.* Hardeman, 14 Id. 339; Borden *v.* Fitch, 15 Johnson, 141; Buchanan *v.* Rucker, 9 East, 192.

‡ 9 Cranch, 144.

§ Webster *v.* Reid, 11 Howard, 460; Boswell's Lessee *v.* Otis, 9 Id. 350; Oakley *v.* Aspinwall, 4 Comstock, 515.

‖ Weed *v.* Weed, 25 Connecticut, 337; Means *v.* Means, 42 Illinois, 50; Hill *v.* Hoover, 5 Wisconsin, 386; Wallis *v.* Thomas, 7 Vesey, 292; Water Power Co. *v.* Pillsbury, 60 Maine, 427; Lane *v.* Wheless, 46 Mississippi, 666; Hettrick *v.* Wilson, 12 Ohio State, 136; Vallejo *v.* Green, 16 California, 160.

sees fit, affirm the sale and proceed to enforce his priority against the proceeds of the sale, which is the real nature of the proceedings in this case.*

Authority is doubtless possessed by the assignee to sell the property of the bankrupt, whether the same is or is not incumbered, but when he sells incumbered property without any special order from the court he sells the same subject to any and all lawful incumbrances, and can convey no better or higher interest than the bankrupt could have done. In such a case it will be taken for granted that the assignee sold *only* such right or title to the property as was vested in him as the representative of the bankrupt, and therefore that he sold it subject to the incumbrances.

Such sales may be made without notice to the secured creditor, but if the assignee desires to sell the property free of incumbrances he must obtain authority from the bankrupt court, and must see to it that all the creditors having liens on the property are duly notified, and that they have opportunity to adopt proper measures to protect their interests.†

DECREE AFFIRMED.

Mr. Justice BRADLEY did not sit in this case.

---

* Livaudais *v.* Livaudais, 3 Louisiana Annual, 454. .

† King *v.* Bowman, 24 Louisiana Annual, 506; Bump on Bankruptcy (7th ed.), 156; In re Kirtland, 10 Blatchford, 515.