### In re GRACEY.

(District Court, E. D. Pennsylvania. May 15, 1917.)

No. 4386.

1. BANKRUPTCY ☞314(6)—CLAIMS—TAXES.

The holder of a third mortgage on land of a bankrupt, which the trustee had registered in his name, and on which he had paid taxes for 1912, in 1914 caused judgment to be entered on the bond, and the premises to be sold to the C. Company, which conveyed to the mortgagee and two other persons, paying the expenses. They sold the land to tenants of the premises. The C. Company, after taking title, paid the taxes for 1913, with interest and penalties, and the tenants, after they took title, paid the taxes for 1914. Both claimed to be entitled to reimbursement from the trustee, under the Pennsylvania rule that if a mortgagee, to protect his own interest, forecloses and pays taxes for which the owner is personally liable, the law will imply a promise of the owner to the mortgagee. The trustee was given no notice of the sale, and no request that he pay the taxes was made prior thereto. *Held*, that the tenants, having paid the taxes as owners of the property, did not come within the rule mentioned, and were mere volunteers, so far as the trustee's liability to them was concerned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 486.]

2. BANKRUPTCY ☞314(6)—CLAIMS—TAXES.

Assuming that the C. Company was agent for the mortgagee, it, or those to whom it conveyed, was not entitled to reimbursement under the rule stated, as, having elected to take judgment on its bond and sell the property without notice, it took the property subject to its burdens.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 486.]

In Bankruptcy. In the matter of Archibald A. Gracey, bankrupt. On petition by one Flack and another for review of an order of the referee. Petition for review dismissed, and order affirmed.

Middleton & Blakely and E. Stanley Richardson, all of Philadelphia, Pa., for petitioners.

Arthur E. Weil, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. On July 16, 1915, Mary E. Smyth, as treasurer of the Commercial Real Estate Company, filed with the referee a petition for repayment of taxes, amounting to $320.41, paid by the company for the year 1913 upon real estate at Fifty-Second and Haverford avenue, Philadelphia, formerly owned by the bankrupt. The petition recites that the claim has been assigned to Henry A. Lewis and Joseph J. Smyth, who loaned the company the funds to pay the taxes, and that they are the real beneficial claimants. A petition was also filed on the same day by Henry A. Lewis and Joseph J. Smyth, claiming from the trustee the amount of the taxes then due for 1914, amounting to $309.72. The claims have since been assigned to Flack and Seibert, who by sundry conveyances are the present owners of the real estate.

The real estate was subject to three mortgages, the first, for $12,500, held by the Fidelity Trust Company, the second, for $4,250, held by a Mrs. Watkins, of Baltimore, and the third, for $10,000, made to Geraldine Gracey and assigned by her to Joseph J. Smyth. The claimants, Flack and Seibert, were tenants of the greater part of the premises at a rental of $75 per month. Under the lease, the tenants had the option of applying the rent to the payment of the taxes, water rent, and interest on mortgages. The rent was insufficient to pay the taxes, water rent, and interest on the first and second mortgages. The third mortgage, nominally for $10,000, was given to secure the payment to Joseph J. Smyth of a debt of $1,500. The interest upon it was never demanded nor paid.

After his election, the trustee, at the direction of the referee, registered the title to the property in his name as trustee, and paid the taxes for 1912 and the interest on the first mortgage to February 23 and on the second to February 24, 1913. Flack and Seibert paid the rent to the trustee up to October 1, 1913, but paid no rent to him after that date. In the summer of 1914 Smyth caused judgment to be entered on the bond accompanying the third mortgage, and the premises were sold at sheriff's sale on November 21, 1914. No notice of the proceedings or the sale was given or attempted to be given to the trustee, although Smyth and his attorney knew of the trustee's ownership and his address. No demand was made upon the trustee prior to the sheriff's sale for the payment of taxes for either 1913 or 1914, nor was any petition presented to the referee for an order for their payment. At the sale no attempt was made by the mortgagee to bid up the property to protect his mortgage, nor to cover the taxes which the Commercial Real Estate Company and his attorney knew at the time were unpaid, and the property was struck down to the company for $75, sufficient to cover the sheriff's costs only, and the sheriff's deed was made to it. The Commercial Real Estate Company conveyed the property to Paul Reilly, Esq., attorney for it and also for Smyth, on March 17, 1915. Mr. Reilly conveyed it to Henry A. Lewis, Joseph J. Smyth, and Geraldine Gracey on May 29, 1915. Geraldine Gracey

quitclaimed her interest to Lewis and Smyth, who conveyed it on January 17, 1916, to Flack and Seibert.

After taking title from the sheriff, the Commercial Real Estate Company, as recited in the petition, paid the taxes for 1913, with interest and penalties, and filed with the referee its petition for repayment of these taxes as part of the expense of the administration and a preferred claim. The taxes for 1914 were paid by the petitioners for review after they took title. The referee denied the prayers of the petitions. The petitioners for review claim that they are entitled to be repaid the taxes, which, they claim, the trustee should have paid as part of the expenses of the administration of the estate. They rely upon the law as stated by Mr. Justice Trunkey in the case of Hogg v. Longstreth, 97 Pa. 255, holding that, if a mortgagee, in order to protect his own interest, foreclose and pay taxes for which the owner is legally and personally liable, the law will imply an assumpsit on the part of the latter to the former; and the petitioners claim that, inasmuch as the title was in the trustee, they, as assignees of the Commercial Real Estate Company, should be paid out of the estate in priority to the general creditors as part of the costs of administration.

From the testimony it appears that Smyth was assignee of Geraldine Gracey, the mortgagee. He alone was interested in the mortgage at the time of judgment and sale. Prior to the proceedings, he arranged with Geraldine Gracey and Henry A. Lewis that they were to each "put up" some of the money to pay the expenses of the proceedings and were to share pro rata in the premises or the proceeds thereof. As he stated it:

"Anybody who put up money for the costs was to share pro rata in whatever was gotten out of the mortgage. * * * Q. You had no thought of any of those people in connection with this mortgage up to that time? A. I never intended to leave them have any part of that mortgage."

The petitioners who ultimately bought the property were represented by Mr. Pershing, and the arrangement was that, if the tax bills were paid out of the bankrupt estate, Lewis and Smyth were each to get one-half of $65 from the purchaser.

[1] As to the taxes for 1914, the petitioners have no claim under an assignment of the mortgage from Smyth, for they were paid by Flack and Seibert after they took title to the property, and neither Smyth nor any one claiming under him an interest in the mortgage paid them. They had no interest in the property, save as lessees, nor any lien upon the same prior to the sheriff's sale. They did not pay the taxes as tenants under their lease, but paid them as owners of the property. Consequently they do not come within the rule of Hogg v. Longstreth, and, as far as the liability of the trustee to pay them is concerned, they were mere volunteers.

[2] As to the taxes for 1913, if the petitioners have any right, it must be through the right of Smyth as mortgagee at the time of the sale. According to Mr. Reilly's testimony, the Commercial Real Estate Company held the title for Smyth, Lewis, and Geraldine Gracey, and conveyed to Mr. Reilly, and he in turn conveyed to them. Smyth and Lewis, after Geraldine Gracey had quitclaimed her interest to them, conveyed to Flack and Seibert for a total consideration of $580.

When the Commercial Real Estate Company bought the property at sheriff's sale for $75, it had knowledge that the taxes were due and unpaid. Neither the mortgagee nor her assignee, during the time the title was in the trustee in bankruptcy, took any steps towards enforcing payment of the taxes by the trustee. If demand had been made upon the trustee for the taxes, and he had had notice of the sale, acting, as he was, for the benefit of the creditors of the estate, he might in their interest, if the equity in the premises had been of any value, have protected the interests of the estate, and bid the property up to enough to pay the taxes, and perhaps realized some value for the estate. If the equity of redemption was a worthless asset, and Smyth, intending by this method to obtain title, had bona fide intended to test the question of value, he would, in the first place, have moved to compel the payment of the taxes before sale, and, in the second place, have given notice of the sheriff's sale to the trustee. If Smyth, the assignee of the mortgagee, was bona fide purchasing to protect his own interest, that fact does not appear from the testimony. At the time of the sale, according to his testimony, his arrangement with Geraldine Gracey and Lewis was that they were to share in whatever he could make out of the mortgage, or what he should recover for the taxes, and after the sale it was arranged that he and Lewis were each to get one-half of $65. The transaction has the earmarks of a mere speculation on the part of Smyth as holder of the third mortgage, together with Geraldine Gracey and Lewis, to speculate upon the legal liability claimed against the trustee for payment of the taxes, without notice to him, while he held the legal title, that he would be called upon to pay them, and without notice to him of the sale. If, as claimed by counsel for the petitioners, the payment was made in relief of the bankrupt estate, there is nothing upon the record to show such state of facts. The municipality, which levied the taxes, has no interest, and the referee has disposed of the question of the right of subrogation in his opinion.

Counsel for the petitioners concedes the correctness under the decisions of the referee's ruling based upon that right, but claims that the doctrine of Hogg v. Longstreth applies, and that, assuming that it does apply, the payment of the taxes was an actual and necessary expense in the administration of the estate for its benefit in the preservation of the real estate. Assuming that, when ordered by the referee, the trustee should pay taxes incurred after the title vested in him, and that the payment by the Commercial Real Estate Company was as agent for Smyth, although no such claim is set up in any of the petitions filed with the referee, the mortgagee's assignee in coming into a court of equity is bound by the rule that he who seeks equity must do equity. If the trustee had attempted to sell the real estate, so as to affect the lien of the third mortgage under an order of the court, it would have been indispensable that the mortgagee have notice of the purpose of the court to make such an order, or that he be given an opportunity to be heard in order to show why the sale should not affect his lien, and, if a sale had been made without notice to him, his mortgage would not have been discharged. Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116.

The administration of the bankrupt's estate having come into the court of bankruptcy, and the trustee as an officer of the court holding title to the bankrupt's property for the benefit of all the creditors of the estate, the holder of the third mortgage, knowing of the existence of the taxes and electing to sue out a judgment on his bond and sell the property, without notice to the trustee, must be presumed to have taken the property subject to its burdens. Having elected to proceed without recognition of the bankruptcy proceedings, or notice to the trustee, and without affording him an opportunity to protect the interests of the estate, he is in no position now to come into a court administering equity and ask to be reimbursed the amount of the taxes out of the general funds of the estate under a plea of their being part of the expenses of the administration.

The petition for review is dismissed, and the order of the referee affirmed.