## SILBERBERG v. RAY CHAIN STORES, Inc.

District Court, D. New Jersey.

Dec. 4, 1931.

John Milton, of Jersey City, N. J., for equity receivers.

William Harris, of Newark, N. J., for trustee in bankruptcy.

FAKE, District Judge.

### Facts.

On the 29th day of December, 1930, a complaint was filed in the above-entitled cause alleging the insolvency of the defendant corporation and praying the appointment of receivers, whereupon temporary receivers were appointed who subsequently, on the 12th day of January, 1931, were made permanent. These receivers proceeded with the performance of their duties, retained counsel, and gave liberally of their time to the business,

requiring the exercise of a high degree of skill and intelligence. While the receivers were thus employed, and on the 2d day of April, 1931, upwards of three months after their appointment, an involuntary petition in bankruptcy was filed against the defendant corporation, and proceedings subsequently had thereunder resulted in an adjudication on May 4, 1931, and on the 29th day of said month trustees were duly appointed and qualified.

On the 23d day of September, 1931, a petition was filed herein praying, among other things, that allowances be made by this court for the equity receivers and for their counsel.

### Query.

Is the equity court vested with power to fix the amounts and cause to be paid the allowances as prayed for; it appearing that bankruptcy has intervened within four months of the institution of the equity proceedings under which the receivers were appointed?

In approaching a solution of the problem thus raised, it will be well at the outset to examine into the question of the title to the property. It is obvious that, if the title and exclusive jurisdiction over the same be vested in one court, no other court may deal with the whole or any part thereof.

The latest rulings of the United States Supreme Court bearing on the subject of title as here under consideration are found in the decision of Mr. Justice Roberts in Isaacs v. Hobbs Tie & Timber Co. (February 24, 1931) 282 U. S. 734, 51 S. Ct. 270, 271, 75 L. Ed. 645, and in Straton v. New (April 20, 1931) 283 U. S. 318, 51 S. Ct. 465, 466, 75 L. Ed. 1060. In the Isaacs Case he said: "Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U. S. 254, 259, 260, 33 S. Ct. 854, 57 L. Ed. 1174; Wells v. Sharp (C. C. A.) 208 F. 393; Galbraith v. Robson-Hilliard Grocery Co. (C. C. A.) 216 F. 842. It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. It may order a sale of real estate lying outside the district. Robertson v. Howard,

supra; In re Wilka (D. C.) 131 F. 1004. When this jurisdiction has attached, the court's possession cannot be affected by actions brought in other courts. White v. Schloerb, 178 U. S. 542, 20 S. Ct. 1007, 44 L. Ed. 1183; Murphy v. Hofman, 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190. This is but an application of the well-recognized rule that, when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property. Murphy v. Hofman, supra; Wabash R. R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457. Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka, supra; Nisbet v. Federal Title & Trust Co. (C. C. A.) 229 F. 644. The exercise of this function necessarily forbids interference with it. * * *"

In the Straton Case he said this: "The purpose of the Bankruptcy Act (11 USCA) passed pursuant to the power of Congress to establish a uniform system of bankruptcy throughout the United States, is to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. This jurisdiction is exclusive within the field defined by the law, and is so far in rem that the estate is regarded as in custodia legis from the filing of the petition. Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208. It follows that liens cannot thereafter be obtained nor proceedings be had in other courts to reach the property, the district court having acquired the exclusive right to administer all property in the bankrupt's possession. Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305; White v.

Schloerb, 178 U. S. 542, 20 S. Ct. 1007, 44 L. Ed. 1183; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; U. S. F. & G. Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055; Hebert v. Crawford, 228 U. S. 204, 33 S. Ct. 484, 57 L. Ed. 800.

From these rulings and the cases cited to support them, no other conclusion can be reached than that upon the filing of the petition in this cause the title to the bankrupt's estate, wherever found, vested exclusively in custodia legis in the bankruptcy court. This then leads to an inquiry as to the extent of the operation of the General Corporation Act of New Jersey in vesting title in the equity receivers on their appointment in proceedings here under that act.

It is argued that, by virtue of section 68 of the General Corporation Act, Revision of 1896 (P. L. 1896, p. 299, 2 Comp. St. 1910, p. 1644, § 68), as supplemented and amended, title vests in the equity receiver, and, as the statute declares "the corporation shall be divested of the title" and by reason thereof, the bankruptcy court takes neither the actual nor the constructive possession upon bankruptcy supervening within four months of the filing of the complaint in equity. Such in effect has heretofore been the ruling in the New Jersey Court of Chancery, so far as a portion of the estate required for the fixing and paying out of fees and allowances to receivers and counsel is concerned. In Cudahy v. N. J. Dairy Products Co., 90 N. J. Eq. 541, 107 A. 147, an action in equity in New Jersey, Vice Chancellor Lane, referring to a receiver where bankruptcy had intervened, ruled that: "The receiver may not, without the consent of this court, either submit to the jurisdiction of the bankruptcy court to fix his compensation, or turn over to the trustee in bankruptcy or to any other officer of the bankruptcy court, or of any court, any of the assets within his control. If the receiver does not move, then the trustee in bankruptcy may apply to this court to compel the receiver to file his account and may ask this court for an order fixing the compensation of the receiver, * * *" citing Singer v. National Bedstead Co., 65 N. J. Eq. 290, 55 A. 868, and Kennedy v. American Tanning Co., 81 N. J. Eq. 109, 85 A. 812. The learned Vice Chancellor cites In re Watts & Sachs, 190 U. S. 1, 23 S. Ct. 718, 727, 47 L. Ed. 933, as authority for the procedure thus laid down.

In a study of the Watts Case, supra, we find Chief Justice Fuller ruling that the bank-

ruptcy proceedings "operated to suspend the further administration of the insolvent's estate" in the equity court, but it remains for that court "to transfer the assets, settle the accounts of its receiver and close its connection with the matter. Errors, if any, committed in so doing could be rectified in due course and in the designated way." Again in the same opinion he speaks of "surrender of the assets and the winding up of the accounts" by the receivers. It should be noted in considering the Watts Case that the rules of procedure therein discussed by the Chief Justice were not thought pertinent by Mr. Justice Harlan in his concurring opinion, or at least he confined his concurrence to the evidence bearing upon the alleged contempt which was the gist of that action. The Watts Case is cited by Mr. Justice Brandeis in Lion Bonding Co. v. Karatz, 262 U. S. 640, at page 642, 43 S. Ct. 641, 642, 67 L. Ed. 1151, as his authority in saying: "Even where the court which appoints a receiver had jurisdiction at the time, but loses it, as upon supervening bankruptcy, the first court cannot thereafter make an allowance for his expenses and compensation. He must apply to the bankruptcy court." When this language was brought to the attention of Vice Chancellor Church in Shachat v. Standard Auto Supply Co., 106 N. J. Eq. 105, 150 A. 183, 185, he disposed of it by holding: "The remarks of Mr. Justice Brandeis were purely obiter," and proceeded to fix allowances. A research into the intent and meaning of the procedure outlined in the Watts Case discloses that Mr. Watts himself placed the same interpretation upon the words of Mr. Justice Fuller as did Mr. Justice Brandeis, in the Lion Bonding Case, supra, since we find, in Re M. Zier & Co. (D. C.) 127 F. 399, affirmed in (C. C. A.) 142 F. 102, that he (Watts), followed the course of procedure indicated by Mr. Justice Brandeis. He repaired, not to the state court where his early arguments had been given favorable consideration, but rather to the United States District Court, where he had received unjustifiably harsh treatment in his contempt proceedings, and there sought counsel fees and allowances which were emphatically denied.

If, as Vice Chancellor Church says, the language of Mr. Justice Brandeis, above quoted, is merely obiter, then, by the same reasoning, the language of Mr. Justice Fuller in the Watts Case is likewise obiter, and we are brought back again to the question of title in ascertaining the answer to our query. In this connection we are impressed with the logic of that portion of Vice Chancellor Lane's opinion in Cudahy v. N. J. Dairy Products

Co., supra, wherein he said: "In such cases [cases wherein the receiver had parted with possession to the bankruptcy court], however desirous the individual members of the court may be to lend any aid or assistance possible to the federal courts, the court will not ordinarily fix the compensation or indicate officially its views as to the proper amount. The court will not ordinarily make an order or decree which cannot be made effective by its own process." Here two things are clearly brought out. The one, that when the equity court has lost possession of the res to another court, the first court's jurisdiction over it is at an end; and the other, that equity will not do a vain thing: If it cannot enforce its decree, no such unenforceable decree will be entered.

Referring again to the language of Mr. Justice Roberts in Isaacs v. Hobbs, supra, we find that the title to the res vests in the trustee with actual or constructive possession, as of the date of the filing of the petition in bankruptcy, and the bankruptcy court has exclusive jurisdiction to deal with it thereafter. Hence the conclusion must be arrived at in the instant case that, upon the filing of the petition in bankruptcy, the federal court of equity lost title and jurisdiction over the res, and therefore lost power to make allowances out of the funds, and it should not do the vain thing.

The Bankruptcy Act expressly provides in section 3 (11 USCA § 21) that a general assignment for the benefit of creditors or the appointment of a receiver in insolvency proceedings are each acts of bankruptcy, and, in dealing with the effect of an assignment for the benefit of creditors, Mr. Justice Holmes in Randolph v. Scruggs, 190 U. S. 533, 23 S. Ct. 710, 711, 47 L. Ed. 1165, said: "It is admitted that a general assignment for the benefit of creditors, made within four months from the filing of a petition in bankruptcy, is void as against the trustee in bankruptcy, so far as it interferes with his administering the property assigned."

And in that case it was argued: "That the avoidance of the voluntary assignment goes only to the administration of the property, and not to the title; that the trustee simply succeeds the privately chosen assignee in administration of the trust under the deed. * * * *"

As to which the learned justice said: "It does not seem to us to need much argument to show that this artificial refinement cannot stand. If by declaring the assignment an act

of bankruptcy, the statute means that the conveyance shall not be effectual against the bankruptcy proceedings, as is agreed, the natural and simple construction is that it means that the deed shall be avoided as a whole when the trustee takes the goods."

Again in Stellwagen v. Clum, 245 U. S. at page 613, 38 S. Ct. 215, 217, 62 L. Ed. 507, Mr. Justice Day said: "True it is that general assignments * * * are acts of bankruptcy * * * and since the amendment of 1903 * * * a receivership of an insolvent debtor with a view to distribution of his property for the benefit of creditors will have the like effect."

Nothing has been advanced in the arguments presented here which would lead to a rational conclusion that there is any difference in principle between the bankrupt being divested of its title by virtue of a general assignment in favor of creditors and its being so divested by virtue of proceedings under the Corporation Act or under the inherent powers of an equity court, since in either event the results are the same in forcing a distribution of the assets among those who may be entitled to them under the law. The divesting of title by means of a deed as distinguished from a decree of a court is a mere distinction without ultimate difference. The powers of the court are not greater than the power of taxation inherent in the state itself, and in Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190, it was held that a tax sale made without leave of the bankruptcy court, after an adjudication in bankruptcy, was void. Therefore the conclusion must be arrived at here that, upon bankruptcy and against the effect thereof, receivers in equity can be given no greater rights or powers than assignees under deeds of assignment.

It has been suggested that the judge, sitting as a chancellor, should, by reason of his familiarity with the facts, and his superior knowledge as to the value and extent of the services of the receivers and their counsel, fix the fees and permit their payment, turning the balance over to the trustee in bankruptcy. This would seem sound in equity as well as wise in the light of the economic problem involved, but here we are dealing with an act of Congress, the authority for which is found in the national Constitution, and the effect of it is to limit the free exercise of equity powers within the defined limits of the act, nor can comity furnish a basis upon which the bankruptcy court may permit another court to partially administer the estate, since there can be no comity between courts where one of them is vested with sole and exclusive jurisdiction to act.

Should the receivers in such a case as this refuse to turn all the property over to the trustee in bankruptcy, claiming and retaining therefrom, an amount for moneys expended by way of payment to counsel or for other services rendered, either as fixed by the equity court or as arbitrarily withheld upon their own initiative, they would place themselves in the position of adverse claimants, in which event the rule laid down in Re Jack Stolkin (C. C. A.) 42 F.(2d) 829, would obtain; resulting in the necessity of a plenary suit by the trustees for a recovery, as distinguished from a summary proceeding for possession where merely colorable rights are dealt with and punishment for contempt is the means of enforcement.

It is noted from a study of the facts in the Stolkin Case, supra, that the assignees had actually or at least theoretically made disbursements of the fund in controversy, and therefore the conclusions there do not attempt to extend the rulings laid down by the Supreme Court in Louisville Trust Co. v. Comingor, 184 U. S. 22, 22 S. Ct. 293, 46 L. Ed. 413, and in Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823.

Viewing the problem from another angle, it would appear that the trustees in bankruptcy are vested with something more than a mere colorable claim to the property. Title is in them with constructive possession. Hence for this court to make allowances for receivers and counsel fees out of that fund on the petition here would be to deal with it in a summary proceeding where only a plenary suit, if any, would lie.

The views of the Circuit Court of Appeals of the Second Circuit, on the subject of the supremacy of the bankruptcy court, are found in Re Neuburger, 240 F. 947, wherein it was held that the state court was without authority to authorize any expenditures from the estate after an adjudication in bankruptcy, and in this, the Third Circuit, Judge Davis said in Roberts Auto & Radio Supply Co. v. Dattle (C. C. A.) 44 F.(2d) 159, 160: "The filing of the petition was a caveat to all the world and in effect an attachment and injunction. The property of the bankrupt was from that time in custodia legis, and thereafter jurisdiction to administer the assets of the bankrupt's estate was exclusively in the bankruptcy court."

The query propounded at the beginning hereof must be answered in the negative. An order will therefore be entered to that effect.