# The Montgomery Building & Loan Association of Norristown v. Coscia et al.

*Harry F. Hauser,* for plaintiff.

*Desmond J. McTighe,* of *Fox & McTighe,* and *Charles H. Brunner,* for defendants.

KNIGHT, P. J., August 14, 1944.—This is an action of sci. fa. sur mortgage given by John M. Yerger and John F. Burke to plaintiff for $1,200 dated May 21, 1924, and secured upon premises designated as 809 Arch Street, Norristown, Pa.

To the statement of claim the defendants, real owners (the original mortgagors having been released), filed an affidavit of defense averring that the said mortgage had been discharged as a lien on said premises by virtue of a private sale "free and clear of encumbrances" to a predecessor in title by the trustee in bankruptcy of John M. Yerger, the then owner.

By stipulation duly filed, the case was tried before a judge without a jury, and after oral argument and submission of briefs the matter is pending for decision.

From the testimony and exhibits we make the following

*Findings of fact*

1. On May 21, 1924, John M. Yerger and John F. Burke executed and delivered to plaintiff a mortgage in the principal sum of $1,200 secured upon premises designated as 809 Arch Street, Norristown, Pa., and recorded in Montgomery County, in mortgage book no. 951, p. 305, the following day. This mortgage was expressly made subject to a first mortgage of $1,800 given the same day to Accursio Scaruto.

2. On April 2, 1928, the said Yerger and Burke executed and delivered to Edgar S. Buyers a bond and mortgage in the principal sum of $1,800 secured upon the same premises, which mortgage was recorded in Montgomery County, in mortgage book no. 1205, p. 34. This mortgage was intended by the parties thereto to replace the Scaruto mortgage as a first lien upon the premises. However, as the Scaruto mortgage was subsequently satisfied and plaintiff's mortgage never subordinated in lien to the Buyers mortgage, plaintiff's mortgage became a first lien and the Buyers mortgage became a second lien.

3. On July 26, 1929, Burke with the joinder of his wife, conveyed his interest in the property to Yerger by deed recorded in Montgomery County, in deed book no. 1087, p. 51.

4. On September 23, 1932, Yerger, while still the owner of the property, was adjudicated a bankrupt by the District Court of the United States for the Eastern District of Pennsylvania as of cause no. 16,197.

5. On January 27, 1933, William C. Irvin, trustee of the bankrupt estate, filed with the referee, Thomas Hallman, Esq., a petition for leave to sell the premises in question at private sale to Edgar S. Buyers for the sum of $100 free, clear, and discharged of all liens.

6. Thereafter the referee mailed to plaintiff a notice stating that the trustee had filed petitions for the private sale of this and other properties, and that a meeting of creditors would be held at his office on March 1, 1933, and orders made unless objections were filed. This notice contained no mention that the sale was to be free and clear of encumbrances.

7. On March 3, 1933, Raymond A. Gross handed to Elgin H. Lenhardt, secretary of plaintiff, a written notice addressed to plaintiff setting forth that the trustee had filed his petition for leave to make private sale of the property for $100 free and clear of all liens and encumbrances, specifically referring to plaintiff's mortgage, and stating that a hearing would be held at the referee's office on March 14, 1933, when such sale would be made unless objection were filed.

8. On March 14, 1933, no objection to the sale having been made, the referee found that such sale would be to the best interest of the creditors and authorized and directed that it be made, and ordered that the proceeds be held by the trustee subject to the claims of the mortgagees and other lienholders.

9. At the time of the sale the property in question was valued at $2,600.

10. At the time of the sale the property was subject to the lien of plaintiff's mortgage, and to the lien of

the Buyers mortgage of $1,800, and to the liens of a number of judgments; all encumbrances aggregated $29,480.

11. On April 18, 1933, the trustee in bankruptcy conveyed the said property to the said Edgar S. Buyers by deed recorded in Montgomery County, in deed book no. 1163, p. 260.

12. On April 16, 1934, the said Edgar S. Buyers, with the joinder of his wife, conveyed the property to Lottie Kultunick by deed recorded in Montgomery County, in deed book no. 1166, p. 581.

13. On September 23, 1941, the said Lottie Kultunick for a consideration of $2,550 conveyed the property to defendants by deed recorded in Montgomery County, in deed book no. 1419, p. 542.

14. As of November 30, 1932, the payments called for by the bond accompanying the mortgage in suit were in default to the extent of $66 dues, $66 interest, $1.50 premiums, and $13.20 in fees, a total of $146.70, and on that date plaintiff canceled six shares of its stock standing in Yerger's name and applied the cancellation or withdrawal value of $766.32 on account of the mortgage indebtedness.

15. According to the statement of claim there is now due on plaintiff's mortgage a balance of principal of $580.38, attorney's commission of $29.02, and interest on the principal at six percent from November 30, 1932. The sum of $580.38 on that date was charged against a reserve set up against losses.

16. It was not until 1941 that plaintiff learned it owned the first mortgage on the premises, and not until some time after the bankruptcy that Buyers learned that he had held a second and not a first mortgage.

Because of the view we take of this matter, we shall discuss this case from the standpoint of plaintiff's attack on the validity of the sale of the property by the bankruptcy court rather than from the affirmative defense by defendants setting up the validity of such

sale. Such procedure will lend brevity to what might otherwise become too lengthy an opinion.

Plaintiff contends that the sale to Buyers was invalid for three reasons: (1) Plaintiff was given no adequate notice of the proposed sale free and clear of encumbrances; (2) the bankruptcy court had no power to sell or at least should not have exercised the same when the amount of the liens exceeded the value of the property; (3) such sale violated the provisions of the Bankruptcy Act since it affected plaintiffs' lien in that no fund was realized to which plaintiffs' lien might be transferred.

We shall first consider the matter of notice. The Bankruptcy Act of July 1, 1898, as amended by the Act of June 5, 1936, c. 512, 49 Stat. at L. 1476, §58, 11 U. S. C. §94(*a*), provides:

"(*a*) Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt or as afterward filed with the papers in the case by the creditors, of . . . (4) all proposed sales of property: *Provided,* That the court may, upon cause shown, shorten such time or order an immediate sale without notice. . . ."

It is undisputed that plaintiff received by mail a notice that a petition for the private sale of this and other property had been filed, that a meeting of creditors would be held, and orders made unless objections were filed. The notice did not state that the sale was to be free and clear of encumbrances. Obviously the reason why plaintiff was not moved to inquiry or action by this notice was that about two months previously it had canceled the bankrupt's stock securing the loan, and had charged off as an asset the amount due against a reserve set up against losses under the belief that its mortgage was a second lien.

However, we agree with plaintiff's contention that where the notice makes no mention that liens are to be discharged the sale cannot accomplish that purpose.

This was the case in In re De Fatta, 10 F. Supp. 375 (1932), where the court refused to order cancellation of record liens where a similar notice was given. As a matter of fact no hearing was held and no order was made on March 1, 1933, the date mentioned in the notice.

It clearly appears that on March 3, 1933, plaintiff's secretary had *handed* to him a notice, which if otherwise valid contained all requisite information concerning the proposed sale and a meeting to be held in connection therewith on the following March 14th. This notice was delivered personally by a Norristown constable, who apparently had no official connection with the bankruptcy court or the proceedings therein. Plaintiff contends that this "actual" notice is insufficient to bind it, and that therefore its mortgage could not be discharged by the subsequent sale. It contends that the notice by mail provided for in section 58 of the act is mandatory, and that actual notice cannot take the place of notice by mail and is ineffective in the absence of any act assenting to the sale.

In support of its contention plaintiff cites Factors' & Traders' Ins. Co. v. Murphy et al., 111 U. S. 738 (1884), as a case where *actual* notice was held insufficient to bind a lienholder. There Mrs. Murphy sued to foreclose her mortgage on property which had been sold to another lienholder by the bankruptcy court free of encumbrances, alleging the sale was not binding on her "because she was not made a party to the proceeding and had no notice of it". The record shows that an individual who "understood himself as acting for Mrs. Murphy, having as her agent possession of the two notes now in suit" took part in the negotiations and proceedings for the sale and purchase of the property and explained the same to Mrs. Murphy who did not dissent. But the records did not anywhere show that he was authorized to represent her in the sale.

The Supreme Court held that such informally acquired knowledge was not "such service of process or

other notice as makes Mrs. Murphy such a party to the bankruptcy proceedings as binds her to the sale and discharges her lien." Clearly the facts therein are different from those in the instant case. . In the Murphy case the court cited and relied upon Ray v. Norseworthy, 23 Wall. 128 (1874). In this case a notice of the proposed sale was sent to an attorney supposed to be Norseworthy's, but who in fact did not represent him at all in any way. The court was undoubtedly correct in deciding the sale to be invalid as to Norseworthy.

On this branch of the case plaintiff also cites In re Weeks, 4 F. Supp. 558 (1933). But in that case, while stating the correct proposition that a lien creditor is entitled to notice of a sale free of his lien, the court held that the complaining creditor had received adequate notice by mail.

Plaintiff also cites as authority that actual notice is insufficient the case of In re Lake Champlain Pulp & Paper Corp., 20 F. (2d) 425 (1927). However, in that case the notice was of a meeting of creditors to decide whether a sale should be made, and the court held that even though the objecting lienholder was present at the hearing no notice of any kind would have been sufficient, as the sale was invalid because violative of a statute. It purported to be a public sale but no public notice was given, the bidding was collusive and the price grossly inadequate. Clearly such a decision has no bearing on the present case.

In view of the foregoing we conclude that the notice received by plaintiff was sufficient. It is idle to urge that personal notice is invalid and that a mailed notice is required. To us it would seem to be just as satisfactory if not more satisfactory to all to have the referee's notice handed to an officer of plaintiff by an individual who can subsequently prove the same rather than by a postman who has no knowledge of the contents of mail he delivers.

Next we shall consider the power of the bankruptcy court to order the property sold free of liens, especially when the liens amount to more than the value of the property.

Earlier bankruptcy acts gave express powers for courts to sell free and clear of liens, but such provision is omitted from the current act, a deletion which at first gave rise to some doubt as to the continued existence of the power. However, that doubt has now been dispelled, one of the more-recent cases to that effect being Van Huffel v. Harkelrode, Treasurer, 284 U. S. 225 (1931). It is not so well settled, however, that the power may be exercised when the amount of the liens is greater than the value of the property which is the case here.

In Seaboard National Bank v. Rogers Milk Products Co. Inc. et al., 21 F.(2d) 414 (1927), it was said that the power should not be exercised unless there is a reasonable prospect that a surplus will be left for general creditors. See also Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555 (1935).

Other similar expressions of this idea may be found in In re King, 46 F.(2d) 112 (1930), In re American Magnestone Co., 34 F.(2d) 681 (1929), and in many other cases.

Other cases, however, incline to the view that the matter is largely for the discretion of the court: In re Sloterbeck Chevrolet Co., 8 F. Supp. 1023 (1934); Hair v. Byars, 92 F.(2d) 684 (1937).

In Dugan v. Logan et al., 16 S. W.(2d) 763 (1929), it was argued in a suit to quiet a title derived from a sale in bankruptcy that the bankruptcy court was not authorized to order a sale of the property free of liens, when it was apparent the probable sale price would not satisfy the liens. The court in upholding plaintiff's title said (p. 766):

"A court of bankruptcy may sell property in its custody free of liens, and the liens will attach to the

proceeds. Ordinarily a bankruptcy court will not administer property burdened with liens, where it is manifest the property will sell for less than the liens, but that is a matter within the discretion of the court, and if it abuses that discretion its action is not void, but erroneous, and the claiming lienholder must seek to set aside such action in the bankruptcy proceeding."

We are inclined to the view that such a sale is a matter for the discretion of the court, and once it has been exercised we have no right to interfere. And this is especially true when the sale is made to a mortgagee as in the present case, for such a sale merely has the same effect as a foreclosure of the mortgage.

A recent case very similar to that at bar is In re Miller et al., 95 F.(2d) 441 (1938), where the mortgage lien and other liens exceeded the appraised value of the property. The court held that a sale to a mortgagee free of liens and encumbrances was not an abuse of discretion, where it appeared that the lienholder had requested the sale and the referee's report stated, as is the case here, that such sale was for the best interests of the estate. The court said at page 443:

"It is not a question of lack of power to grant the relief; it is a question of whether the discretion . . . has been abused. . . .

"Such discretionary power should not be disturbed unless it appears to have been improvidently exercised, especially where the referee reports that he believes it to be for the best interest of the estate to order a sale free of incumbrances."

Similar language is found In re Los Angeles Lumber Products Co., Ltd., 24 F. Supp. 501 (1938).

Finally, we shall take up the question of whether or not the sale violated section 67 of the Bankruptcy Act, which provides that liens upon bankrupt's property shall not be affected by anything therein.

Plaintiff complains that it is deprived of its rights to satisfy its lien because no fund was raised with

which to pay the same. Such a question should have been raised at the time of the hearing in bankruptcy court. Had plaintiff there objected that the price was inadequate, it would have had full opportunity to offer a higher price or at least place itself in a position to have the referee's action reviewed in a proper tribunal. The referee's formal order does, as is required, transfer the liens to the proceeds of sale. That plaintiff did not see fit to object to the sale or to offer a higher price or even to prove its claim is no reason to move this court to aid it in this proceeding.

In view of the foregoing we are of the opinion that the bankruptcy sale was valid, and that defendants hold the property free of the lien of plaintiff's mortgage. We do not deem it necessary to consider defendants' contention in regard to jurisdiction, estoppel, laches, and bona fide purchase.

Therefore, we draw the following

### Conclusion of law

The lien of plaintiff's mortgage was discharged from the property by the sale in bankruptcy.

There should be entered by the prothonotary the following

### Decision

And now, August 14, 1944, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

A verdict is entered in favor of defendants.

The prothonotary shall give notice to the parties of this decision, and if no exceptions are filed within 30 days after service of such notice shall enter judgment on the verdict.

### Opinion sur exceptions

KNIGHT, P. J., December 27, 1944.—This action of sci. fa. sur mortgage was tried without a jury before the writer of this opinion, who found that the lien of plaintiff's mortgage had been discharged by a private

sale in bankruptcy free and clear of encumbrances after due notice to plaintiff and other parties in interest. The facts are fully set forth in the opinion filed on August 14, 1944.

Plaintiff has filed 15 exceptions. The first is to the second finding of fact; the second is to the first and only conclusion of law; and the third is to the decision in defendants' favor. The remaining exceptions are to the failure of the trial judge to make requested findings of fact, draw requested conclusions of law, and to enter a verdict in its favor.

Plaintiff in its first exception complains that the trial judge was not warranted by the evidence in finding as a fact that the mortgage being sued on, which was originally a second mortgage, was intended to be subordinated in lien to a new mortgage that has been placed on the property in question, which new mortgage was intended to replace the existent first mortgage.

The testimony supporting the questioned finding is found on pages 46 and 47, where Mr. Fegley testified as follows:

"A. Dr. Buyers advised me that he was taking a mortgage on this 809 Arch Street, taking an assignment of the mortgage, and my recollection is that the name of the original mortgagor, was Accursio Scaruto, but when Mr. Yerger had the papers the bond accompanying the original mortgage was missing and I refused to take an assignment and wanted a new mortgage and was advised that the Montgomery Building and Loan Association would enter an agreement to have their mortgage subsequent to ours without executing all new papers. My instructions were that the original mortgage should not be satisfied. Subsequently, however, contrary to my instructions, I found the satisfied mortgage delivered to me and efforts made through me to Mr. Yeager to get this matter straightened out, and the next thing Mr. Yerger went into bankruptcy . . ."

True, this answer was received subject to objection on the ground it was irrelevant. However, throughout the record it appears that Dr. Buyers erroneously believed, until after the sale, that he held a first mortgage, and that plaintiff's officers were under the erroneous impression that its mortgage was merely a second lien. The testimony quoted shows that had the intentions of all parties been carried out, Buyers would have had the first mortgage of record and plaintiff's mortgage would have been junior to it.

We, therefore, consider that testimony not only relevant but of particular importance, because it shows that had plaintiff's mortgage been subordinated of record to the position of a second lien the sale in bankruptcy would have had exactly the same effect as a sale upon foreclosure of the first mortgage, and a second mortgagee in such case would not be heard to complain that no fund was raised for the payment of his lien, if he failed to appear at the sale and bid competitively especially after notice. Therefore, the first exception must be dismissed.

The second exception to the conclusion of law that the lien of plaintiff's mortgage was discharged by the sale in bankruptcy must likewise be dismissed, because in our view of the case from the facts as found and the opinion of the law expressed in the discussion by the trial judge no other conclusion could properly be reached.

It follows that the third exception, which is to the entry of a verdict in favor of defendants, must also be dismissed.

Exceptions nos. 4 to 9, inclusive, are to the failure of the trial judge to make certain findings of fact requested by plaintiff. Some of those requests do state correct facts, and although they were not deemed essential to a disposition of the case, they will be added to the record as supplemental findings of fact. Some of the other requests are only partly correct, and so

with appropriate comment where necessary we now pass on this group of exceptions.

Exceptions nos. 4 and 5. These are sustained and plaintiff's requested findings nos. 9 and 11 are added as supplemental findings nos. 17 and 18.

Exception no. 6. This is sustained in part and plaintiff's requested finding no. 20 is added as supplemental finding no. 19. However there should be added thereto the following sentence: "Plaintiff never filed a proof of its claim in bankruptcy."

Exception no. 7. This is sustained and plaintiff's requested finding no. 21 is added as supplemental finding no. 20.

Exception no. 8. This must be dismissed as the requested finding is not warranted by the evidence. The only evidence as to a copy of the petition having been served on plaintiff is that of its secretary that he had no *recollection* of such service.

Exception no. 9. This is sustained in part. The last sentence of plaintiff's requested finding no. 23 beginning "It never consented" must be deleted, as it is a conclusion either of fact or of law, which we do not feel should be a part of this finding. With this deletion plaintiff's requested finding no. 23 is added as supplemental finding no. 21.

Exceptions nos. 10 to 15, inclusive, are to the failure of the trial judge to draw certain requested conclusions of law and to enter a requested verdict. As these conclusions and verdict are the direct opposite of the decision of the trial judge, these exceptions must be dismissed.

Plaintiff concedes that no case exactly similar factually to the present has been found, and no new decision since the decision by the trial judge has been found.

Plaintiff has reiterated and to some extent elaborated upon its previously presented arguments. The argument most strongly pressed is that, though the bankruptcy court clearly has the power to sell real es-

tate free and clear of mortgage liens, a sale which is for less than the fair value of the mortgage security violates section 67 of the Bankruptcy Act, as amended, in that it not only affects the mortgagee's remedy but likewise adversely affects the validity of his lien.

The reasons given by the trial judge are an ample answer to this argument. The making of such a sale is a matter in the discretion of the bankruptcy court. The power to review the exercise of such discretion rests not in the State but in the Federal courts. The fund realized from the sale was made available to lien-holders. That there was an absence of competitive bidding is not the responsibility of the bankruptcy court, any more than the failure of creditors to file proofs of claim would be its responsibility, provided proper notice was given the parties.

Plaintiff's other principal argument is that the notice given it was not adequate under the requirements of the Bankruptcy Act. No new authority is presented on this subject, and we see no reason to differ from the conclusion of the trial judge that actual written notice personally handed to the secretary of the plaintiff association is entirely adequate for the validity of the sale.

No useful purpose would be served by reviewing the authorities in this opinion.

And now, December 27, 1944, plaintiff's exceptions nos. 1, 2 and 3 are dismissed; exceptions nos. 4 and 5 are sustained; exception no. 6 is sustained in part; exception no. 7 is sustained; exception no. 8 is dismissed; exception no. 9 is sustained in part; and exceptions nos. 10 to 15 are dismissed.

### Supplemental findings of fact

17. Finding no. 6 is amended by adding thereto the following: Said written notice was the only notice the said referee sent by mail relative to the later sale of the land on which plaintiff had a first mortgage.

18. The referee entered no order authorizing the said action of Raymond A. Gross in delivering a written notice to plaintiff.

19. The bankruptcy record shows by the account of the trustee therein filed that no money in any sum was ever paid to plaintiff association from the proceeds of the sale of the land on which plaintiff had the mortgage, and which the trustee in bankruptcy sold for $100. Plaintiff never filed a proof of its claim in bankruptcy.

20. No fund exists in the hands of the trustee in bankruptcy as proceeds of said sale for the payment of the said mortgage of plaintiff.

21. Plaintiff association did not prove its claim on said bond and mortgage in the bankruptcy court, did not appear in the bankruptcy proceedings of John M. Yerger, bankrupt, did not attend any meetings before the trustee or referee, and was not a party to said proceedings.